Gerald Singleton (WA 59010)
gsingleton@singletonschreiber.com
Stephen J. Hill (WA 7651)
shill@singletonschreiber.com
SINGLETON SCHREIBER, LLP
450 Alaskan Way South, Ste. 200
Seattle, WA 98104
Tel. (206) 466-0809

Meagan Verschueren (CA 313117) Pro Hac Vice applicant
mverschueren@singletonschreiber.com
Katie Llamas (CA 303983) Pro Hac Vice applicant
kllamas@singletonschreiber.com
SINGLETON SCHREIBER, LLP
591 Camino de la Reina, Ste. 1025
San Diego, CA 92108
Tel. (619) 771-3473

Attorneys for Plaintiff JANE DOE A, JANE DOE B,
JANE DOE C, and JANE DOE D

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Jane Doe A, an individual; Jane Doe B, an individual; Jane Doe C, an individual, Jane Doe D, an individual,<br><br>Plaintiff,<br><br>v.<br><br>Veer Hospitality Phoenix LLC, SeaTac Hotels, LLC, Evergreen Lodging Group, LLC, Madison Avenue P&L Enterprises, Inc., G6 Hospitality, L.L.C.; G6 Hospitality IP, L.L.C.; G6 Hospitality Property, L.L.C.; G6 Hospitality Purchasing, L.L.C.; G6 Hospitality Franchising, L.L.C.; Motel 6 Operating, L.P.; HSK212, LLC, Wyndham Hotels and Resorts, Inc.; NITSI, LLC; Choice Hotels International, Inc.; and DOES 1-200, inclusive,<br><br>Defendants. | No. 2:24-cv-01270-MJP<br><br>**FIRST AMENDED COMPLAINT** |

FIRST AMENDED COMPLAINT
2:24-cv-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

**COMPLAINT**

COMES NOW the Plaintiff JANE DOE A, by and through the undersigned counsel, and respectfully submit this Complaint for damages and makes the following averments.

**INTRODUCTION**

1.      For years, sex trafficking ventures have brazenly operated both online, and in and out of hotels throughout the United States.

2.      For years, major hotel brands have made public claims that they are combatting human trafficking, while at the same time expanding their economy hotels where sex trafficking is most prevalent and profiting from crimes that are perpetrated on their properties. Despite corporate public statements, human trafficking continues to be most prevalent and lucrative in the hotel and hospitality industry.

3.      Criminals parade their misconduct openly on hotel and motel properties throughout the United States, and profit from providing harbor for the underlying assaults. The hotel and hospitality industry continue to create and expand the environment for traffickers to harbor victims and neglect taking reasonable steps to prevent such criminal misconduct, instead choosing to earn a profit at the expense of human life, human rights, and human dignity.

4.      Public appearances and sponsorships do not excuse corporations and individuals that have financially benefited from sex trafficking. In fact, it reveals corporate knowledge of the use of their properties and technology as hubs for human trafficking. The hotel industry has provided the means, environment, and support for human trafficking industry to become the second largest profitable criminal activity in the United States.[1]

---

[1]      https://www.mbfpreventioneducation.org/human-trafficking-is-now-the-second-most-profitable-criminal-activity-in-the-united-states/

FIRST AMENDED COMPLAINT
2:24-cv-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

5.      As the trafficking industry grows, so have Defendants and their profits through the expansion of their properties and rooms rented for this explicit and apparent purpose.

6.      Jane Doe A files this civil lawsuit seeking compensation for the harm she suffered as a result of being sex trafficked and sold for sex at hotels owned, operated, maintained, regulated, and controlled by Defendants and their agents and employees.

## PARTIES

7.      Jane Doe A is a natural person who is currently a resident and citizen of Federal Way, King County, Washington. Jane Doe A is a survivor of sex trafficking. From 2012 to 2016 she was harbored and forced to engage in commercial sex acts for the benefit of her traffickers and Defendants.

   a.   Due to the sensitive, private, and potentially retaliatory nature of these allegations, this complaint identifies Jane Doe A by a pseudonym only. Jane Doe A will move the court to proceed under a pseudonym in all filings, all public court proceedings, and to limit the disclosure of information about Jane Doe A's true identity in order to protect Jane Doe A and Jane Doe A's identity.

   b.   Generally, pleadings must state the name of all parties.[2] However, there are exceptions when the issues involved may result in retaliation or harm to the Plaintiff.[3] For good cause, the Court may issue an order to protect a party or person from undue harms and burdens.

   c.   In order to maintain her privacy and safety, Jane Doe A should not be compelled to disclose her identity. Jane Doe A's privacy interest substantially outweighs the

---

[2] Fed. R. Civ. P. 10(a).
[3] See WA Cases e.g., Doe v. Penzato, 2011 U.S. Dist. LEXIS 51681, *6-9 (N.D. Cal. May 13, 2011); Roe v. St. Louis Univ., 2009 U.S. Dist. LEXIS 27716, *13, (E.D. Mo. Apr. 2, 2009).

3

FIRST AMENDED COMPLAINT
2:24-cv-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

customary practice of judicial openness.[4] Jane Doe A would be in danger of being forced back into trafficking should her trafficker or his associates learn information about her through publicly filed documents in this action. Additionally, Jane Doe A's life could be put in grave danger should her trafficker or his associates learn information about her through publicly filed documents in this action. Moreover, Defendants will not be prejudiced. Jane Doe A will agree to reveal her identity to Defendants for the limited purpose of investigating Jane Doe A's claims once the parties have entered into a protective order.

8.    Defendant SeaTac Hotels, LLC is a for-profit Washington corporation with its principal place of business in Seattle, Washington. SeaTac Hotels, LLC owned and operated the Motel 6 hotel located at 18900 47th Avenue South, Seattle, Washington during the time Plaintiff was trafficked.

9.    Defendant NITSI, LLC is a for profit Washington corporation with its principal place of business in Everett, Washington. NITSI, LLC owned and operated the Quality Inn located at 1711 W Meeker St, Kent, Washington.

      a.   The Quality Inn located at 1711 W Meeker St, Kent, Washington was previously named Days Inn. This location changed from the Days Inn to the Quality Inn in 2014. Despite this name change this location was owned by NITSI, LLC from 2009 to 2022.

      b.   Any reference in this complaint to Quality Inn is in reference to the hotel located at 1711 W Meeker St, Kent, Washington owned, controlled, and operated by NITSI, LLC.

---

[4] See WASHINGTON cases *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992) (internal citation and quotations omitted).

FIRST AMENDED COMPLAINT
2:24-cv-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

10.     Defendant G6 Hospitality, LLC is a for-profit Delaware corporation with its principal place of business in Carrollton, Texas.

11.     Defendant G6 Hospitality, IP, LLC is a for profit Delaware corporation with its principal place of business in Carrollton, Texas.

12.     Defendant G6 Hospitality Property, LLC is a for-profit Delaware corporation with its principal place of business in Carrollton, Texas. Defendant G6 Hospitality Property, LLC owned and operated the Motel 6 hotel located at 20651 Military Road South, SeaTac, Washington during the time Plaintiff was trafficked and up until 2021.

13.      Defendant G6 Hospitality Purchasing, LLC, is a for-profit Delaware corporation with its principal place of business in Carrollton, Texas.

14.     Defendant G6 Hospitality Franchising, LLC is a for-profit Delaware corporation with its principal place of business in Carrollton, Texas.

15.     Defendant Motel 6 Operating, LP, is a for-profit Delaware corporation with its principal place of business in Carrollton, Texas. Defendant Motel 6 Operating, LP owned and operated the Motel 6 hotel located at 16500 Pacific Highway South, Seattle, Washington from at least 2011 to 2022.

16.     Defendants, G6 Hospitality, LLC, G6 Hospitality IP, LLC, G6 Hospitality Property, L.L.C., G6 Hospitality Purchasing, L.L.C., G6 Hospitality Franchising, L.L.C. and Motel 6 Operating, LP will collectively be referred to as "G6 Defendants."

17.     Defendants SeaTac Hotels, LLC, and NITSI, LLC, Motel 6 Operating LP, and G6 Hospitality Property, LLC will collectively be referred to as "Hotel Defendants."

18.     G6 Defendants are registered to do business in the State of Washington and may be served at Cogency Global Inc., 1780 Barnes Blvd. SW, Tumwater, Washington 98512.

19.     Defendants, SeaTac Hotels, LLC, G6 Hospitality Property, LLC, and G6 Operating LP will

FIRST AMENDED COMPLAINT
2:24-cv-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

collectively be referred to as "Motel 6 Location Defendants."

20.     Upon information and belief G6 Defendants and its brand Motel 6® properties include the locations at 20651 Military Road South, SeaTac, Washington; 16500 Pacific Highway South, Seattle, Washington; and 18900 47th Avenue South, Seattle, Washington. From at least 2012 and through 2016, G6 Defendants transacted business in King County, Washington, and purposefully availed itself to King County, Washington, and the citizens of King County, Washington, through Motel 6®.

21.     Defendant Choice Hotels International, Inc. ("Choice") is a Delaware corporation with its headquarters in Rockville, Maryland and can be served through its registered agent Corporation Service Company, at Wilmington, Delaware.

   a.  Choice is one of the largest hotel franchisors in the world and offers its brand public lodging services through its affiliates, subsidiaries, and franchisees.

   b.  Upon information and belief Choice properties included the Quality Inn at 1711 W Meeker St, Kent, Washington. From before 2012 and through 2016, Choice transacted business in King County, Washington, and purposefully availed itself to King County Washington, and the citizens of King County Washington, through Quality Inn.

22.     Defendants, G6 Hospitality, LLC, G6 Hospitality IP, LLC, G6 Hospitality Property, LLC, G6 Hospitality Purchasing, LLC, G6 Hospitality Franchising, LLC, Motel 6, Inc., Operating, LP, and Choice Hotels International, Inc will collectively be referred to as "Parent Hotel Defendants."

## JURISDICTION AND VENUE

23.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the Trafficking Victims Protection Reauthorization Act ("TVPRA").

24.     Venue is proper in this Court because a substantial part of the events or omissions giving rise to

FIRST AMENDED COMPLAINT
2:24-cv-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

the claims asserted in this action, including the Defendants' misconduct and omissions, led to injuries that occurred in the judicial district where this action is brought.

25.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because, pursuant to 28 U.S.C. §§ 1391(c)(2) and 1391(d), at least one Defendant is a resident of the King County, Washington, and all Defendants are registered to do business in Washington.

## SEX TRAFFICKING UNDER FEDERAL LAW

26.    Sex trafficking is the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of causing the person to engage in a commercial sex act either (1) before the person turns 18 years old; or (2) through force, fraud, or coercion.[5]

27.    The requirements for liability under the TVPRA on a beneficiary theory can be stated as follows: (1) the person or entity "knowingly benefits, financially or by receiving anything of value" (2) "from participating in a venture" (3) that the "person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).

28.    "Sex trafficking" is defined by the TVPRA under 22 U.S.C. § 7102(12) as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purpose of a commercial sex act."

29.    The term "severe forms of trafficking in persons" includes "sex trafficking in which a commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such act has not attained 18 years of age." 22 U.S.C. § 7102(11).

## FACTUAL ALLEGATIONS

### Sex Trafficking of Plaintiff

30.    Starting in 2012, Plaintiff was subjected to sex trafficking at the Motel 6 at 20651 Military Road

---

[5] 18 U.S.C. §1591; 22 U.S.C. § 7102.

FIRST AMENDED COMPLAINT
2:24-CV-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

South, Seatac, Washington; 16500 Pacific Highway South, Seattle, Washington; 18900 47th Avenue South, Seattle, Washington; and Quality Inn located at 1711 W Meeker St, Kent Washington.

31.    For approximately four years, Plaintiff's trafficker rotated between these hotels. These hotels were used by Plaintiff's trafficker for days at a time, encountering the same staff.

32.    Plaintiff's trafficker would use the same named locations so often that she started to quickly recognize staff. The front desk and other staff would consistently see Plaintiff with her trafficker and would have realized they kept returning and exhibiting red flags of trafficking.

33.    A security guard worked at the Motel 6 located at 20651 Military Road S, Seatac, Washington, and it was clear that he was friendly with Plaintiff's trafficker. This security guard would do all he could to protect Plaintiff's trafficker and ensure they wouldn't get caught by law enforcement.

34.    During this time Plaintiff was under the control of her trafficker and endured multiple beatings, threats and manipulation. Plaintiff was beaten so frequently by her trafficker that she often had a busted lip and black eyes.

35.    Plaintiff's trafficker would pistol whip her and leave visible markings. Plaintiff was burned with cigarettes and left with multiple scars all over her body that were visible to Defendants during her frequent stays. Additionally, Plaintiff was often strangled at these locations.

36.    Plaintiff had her teeth knocked out on multiple occasions during her time of trafficking. Again, these were all injuries visible to Defendants and/or their agents.

37.    Plaintiff's trafficker always had a gun with him and would put it to her head often to threaten and intimidate her.

38.    Plaintiff would be with her trafficker when they would check in to each one of these named hotels. Her trafficker did most, if not all, of the talking during check-in. Plaintiff was visibly scared, would not make eye contact, was withdrawn, and timid during interactions with hotel staff.

FIRST AMENDED COMPLAINT
2:24-cv-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

39.     At all the hotel locations named herein, Plaintiff's trafficker would not allow the cleaning crew in to clean the room or change out linens or towels. Instead, the trafficker or Plaintiff would ask for an extraordinary amount of linens and towels throughout their stays.

40.     While staying at the subject Hotel Defendants' locations, Plaintiff's trafficker would post advertisements online offering Plaintiff for commercial sex acts to take place at the Hotels and communicated with "johns" responding to the advertisements. While staying at the subject hotel locations, Plaintiff was forced to take well over five (5) dates per day at all hours.

41.     With each stay at the subject Hotel Defendants' locations, it resulted in several consistent red flags, including but not limited to: paying for stays in cash; paying for extended stays on a day-to-day basis; requesting certain rooms away from other guests; obvious signs of illegal drug use; frequent requests for clean linens or towels; unusually large numbers of used condoms in the trash; unusually large numbers of male visitors going in and out of Plaintiff's room at all times during the day and night; visible signs of physical abuse; women wearing clothing inappropriate for the weather; and loud noises of abuse and other violence audible to staff and/or other rooms.

42.     These red flags were open and obvious to anyone working at the subject hotel locations and lasted for four years.

**The Hotel Industry's Role in Sex Trafficking**

43.     In 2017, human trafficking was noted as the world's fastest growing crime.[6] While the term "human trafficking" incorporates all forced labor, the sex trafficking industry alone pulls in an estimated $99 billion each year making it the second largest illicit crime industry behind only the sale of all illegal

---

[6] Human Trafficking is the World's Fastest Growing Crime. May 22, 2017. The Advisory Board. Available at:
        https://www.advisory.com/daily-briefing/2017/05/22/human-trafficking

FIRST AMENDED COMPLAINT
2:24-cv-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

drugs.[7]

44.     The hospitality industry plays a crucial role in the sex trade.[8] Hotels have long profited from their reputations as havens of privacy and discretion for the offending. Despite the known risks and known trafficking crimes, Hotels, including the Defendants, offer anonymity and non-traceability to the traffickers, making them ideal venues for crime and sex trafficking in particular.  Hotels, including the Defendants, knowingly harbor traffickers, buyers, and victims.

45.     Today, sex slavery is pervasive in the United States, and hotels are the primary place where it happens.[9] For years, sex traffickers have "been able to reap their profits with little risk when attempting to operate within hotels."[10]

46.     According to National Human Trafficking Hotline statistics, hotels are the top-reported venue, even over commercial front brothels, where sex trafficking acts occur.  Traffickers and buyers alike frequently use hotel rooms to exploit victims.

47.     In 2014, 92% of calls received by the National Human Trafficking Hotline involved reports of

---

[7] Profits and Poverty: The Economics of Forced Labor. May 24, 2014. International Labor Organization. Available at: http://www.ilo.org/global/publications/ilo-bookstore/order-online/books/WCMS_243391/lang--en/index.htm.

[8] Cavagnaro, Giovanna L. C. 2017. Sex Trafficking: The Hospitality Industry's Role and Responsibility. Cornell University School of Hotel Administration. Available at: http://scholarship.sha.cornell.edu/honorstheses/3.

[9] This is not only a dominant issue, it's an epidemic issue." See Jaclyn Galucci, Human Trafficking is an Epidemic in the U.S. It's Also Big Business, Fortune (April 2019), https://fortune.com/2019/04/14/human-sex-trafficking-us- slavery/ (citing Cindy McCain, who chairs the McCain Institute's Human Trafficking Advisory Council). "It's also something that is hiding in plain sight. It's everywhere—it's absolutely everywhere." Id.

[10] See Human Trafficking in the Hotel Industry, Polaris Project (Feb. 10, 2016), https://polarisproject.org/blog/2016/02/10/human-trafficking-hotel-industry; see also Eleanor Goldberg, You Could Help Save A Trafficking Victim's Life With Your Hotel Room Pic, Huffington Post (June 2016), http://www.huffingtonpost.com/entry/taking-a-photo-of-your-hotel-room-could-help-save-a-trafficking-victimslife_us_57714091e4b0f168323a1ed7.

FIRST AMENDED COMPLAINT
2:24-cv-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

sex trafficking taking place at hotels. Hotels have been found to account for over 90% of commercial exploitation of children.

48.     Due to the overall hospitality industry's complacency, complicity, and reckless disregard in addressing the known issue of sex trafficking, hotels are the venue of choice for sex trafficking. Traffickers and buyers capitalize on the hotel industry's general refusal to (1) adopt and enforce companywide anti-trafficking policies from the corporate to the property level, (2) train staff on what to look for and how to respond, and/or (3) establish safe and secure reporting mechanisms for those at the point of sale.

49.     Every day, thousands of hotel employees witness manifestations of sex trafficking and commercial exploitation. Thus, the hospitality industry has the greatest reach to prevent, identify and thwart sexual exploitation where it is most likely to occur.

50.     Hotels and motels have the highest obligation to protect their guests from known dangers, including sex trafficking and sexual exploitation and should be held accountable when they fail to comply. As stated in a publication by the Cornell University School of Hospitality, "the hospitality industry is undoubtedly involved in the sex trafficking industry…and therefore has an inherent responsibility to deter the crime and can be liable for failing to do so."

51.     Even estimates by attorneys for the hospitality industry indicate that eight (8) out of ten (10) arrests for human trafficking occur in or around hotels.[11] The 2016 Trafficking in Persons Report issued by the United States Department of State also confirmed that human trafficking occurs in the hospitality industry in the United States.

52.     The complicity of the hospitality industry is essential to the perpetuation of human trafficking,

---

[11] U.S. Dep't of State. 2016. 2016 Trafficking in Persons Report, at 387. Available at: https://www.state.gov/documents/organization/258876.pdf.

FIRST AMENDED COMPLAINT
2:24-CV-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

allowing traffickers to remain transient, collect profits, and evade detection. Sex trafficking ventures move from place to place so that they are less visible to law enforcement. Similarly, sex traffickers also want to keep their victims moving from place to place to isolate them from any possible means of escape or rescue. Traffickers are well aware of the seclusion and anonymity attendant with booking rooms with certain hotel chains, including the Hotel chains named in this complaint — they know it is unlikely that they will be disturbed.

53.    Because of this link between hotels and sex trafficking, government agencies and non-profits have devoted significant efforts to educating the hotel industry, including Defendants, on best practices for identifying and responding to sex trafficking.

54.    Multiple agencies and organizations who actively combat sex trafficking, including the United States Department of Homeland Security, the National Center for Missing and Exploited Children, the Polaris Project, the Washington Attorney General, Love 146, and EPCAT, among numerous others, have established recommended policies and procedures for recognizing the signs of sex trafficking.[12]

55.    Some of the recommended policies and procedures intended to reduce or eliminate sex trafficking, which Defendants are aware or should be aware of and were aware or should have been aware of at all subject times of the trafficking alleged herein, are specific to the hotel industry. These include learning to identify warning signs and indicators of sex trafficking, including but not limited to:

a.    Individuals show signs of fear, anxiety, tension, submission, and/or nervousness;

b.    Individuals show signs of physical abuse, restraint, and/or confinement;

c.    Individuals exhibit evidence of verbal threats, emotional abuse, and/or being treated in a demeaning way;

---

[12] United States Department of Homeland Security Blue Campaign – One Voice. One Mission. End Human Trafficking, https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf

FIRST AMENDED COMPLAINT
2:24-cv-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

d.  Individuals show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

e.  Individuals lack freedom of movement or are constantly monitored;

f.  Individuals avoid eye contact and interaction with others;

g.  Individuals have no control over or possession of money or ID;

h.  Individuals dress inappropriately for their age or have lower quality clothing compared to others in their party;

i.  Individuals have few or no personal items—such as no luggage or other bags;

j.  Individuals appear to be with a significantly older "boyfriend" or in the company of older males;

k.  A group of girls appears to be traveling with an older female or male;

l.  A group of males or females with identical tattoos in similar locations. This may indicate "branding" by a trafficker;

m.  Drug abuse or frequent use of "party drugs" such as GHB, Rohypnol, Ketamine, MDMA (Ecstasy), Methamphetamines, Cocaine, and Marijuana;

n.  Possession and presence of bulk sexual paraphernalia such as condoms or lubricant;

o.  Possession or use of multiple cell phones; and

p.  Possession or use of large amounts of cash or pre-paid cards.

56.  At all times of trafficking alleged herein, Defendants understood the practical and legal association between commercial sex and sex trafficking in a hotel environment. Defendants knew or should have known that signs of commercial sex (prostitution) activity in their hotels were in fact signs of sex trafficking and should have seen signs of the sex trafficking of Plaintiff that was observable by Defendants.

FIRST AMENDED COMPLAINT
2:24-CV-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

57.    Defendants were aware or should have been aware of these signs of sex trafficking when operating, controlling, and managing their hotel properties, including the subject properties, when enacting and enforcing policies and procedures applicable to those hotels and when training, educating, and supervising the staff of that hotel.

58.    Given the prevalence of human trafficking in hotels and the abundance of information about how franchisors, owners, operators and hotel employees can identify and respond to this trafficking, it has become apparent that the decision of Defendants to continue generating revenue from traffickers without taking reasonable steps to identify and prevent trafficking in its hotels, is a conscious decision to financially benefit by supporting and facilitating unlawful sex trafficking.

**Parent Hotel Defendants' Control Over Their Hotel Defendant Locations**

59.    Parent Hotel Defendants are vicariously liable for the acts, omissions, and knowledge of their Hotel Defendants and staff of the Hotel Defendant locations named herein, which are Parent Hotel Defendants' actual agents or subagents.

60.    Upon information and belief, it is a standard practice in the hospitality industry, followed by all Defendants, for Parent companies to set exacting brand quality standards reaching everything from the temperature at which coffee shall be served, to the number of pillows that are placed on the beds, to the types of payments accepted, to when, where, and how guests are greeted.

61.    Parent Hotel Defendants provide their Hotel Defendants with signage on and in front of the building. This is done to assure customers that when they check in, they can expect an experience consistent with the standards of the Parent Hotel Brand. This brand logo is displayed on everything in the hotel, such as pens and paper on the bedside table and staff uniforms worn at the front desk during check-in.

62.    Parent Hotel Defendants provide their hotel branded locations brand name recognition, a

marketing campaign, and hotel listings in the Global Distribution System and other online agency databases. They also provide access to their brand-wide central reservation systems, 800 numbers, revenue management tools, brand loyalty programs, and company websites. Therefore, bookings and room reservations are primarily controlled by Parent Hotel Defendants.[13]

63.     Parent Hotel Defendants subject Hotel Defendants to detailed standards and requirements regarding the operation of the Hotel Defendant locations named herein through the franchising agreements, detailed written policies and manuals and through other formal and informal protocols, directives, mandates, reporting, and expectations imposed by the Parent Hotel Defendants.

64.      Upon information and belief, Parent Hotel Defendants require their branded Hotel Defendants' properties to use a property management system. This system is linked to the Parent Hotel Defendants' corporate network and data center. This is to, among other things, receive reservations, and process payment transactions.

65.     Upon information and belief, per the relevant franchise agreements, Parent Hotel Defendants may enforce their brand standards through periodic inspections of the hotel locations, backed up with the ultimate threat of termination of the agreement.[14]

**Motel 6 Location Defendants and Staff Acted as Actual Agents of G6 Defendants**

66.     G6 Defendants are vicariously liable for the acts, omissions, and knowledge of their Motel 6 locations and staff of the locations named herein, which are G6 Defendants' actual agents or subagents.

67.     G6 Defendants subjected the Motel 6 locations named herein and the owners to detailed standards and requirements regarding the operation of the Motel 6 locations named herein through the franchising agreements, through detailed written policies and manuals, and through other formal and informal

---

[13] Ellen Meyer, *The Origins and Growth of Franchising in the Hotel Industry*, LODGING MAGAZINE (Apr. 10, 2018), The Origins and Growth of Franchising in the Hotel Industry (lodgingmagazine.com).
[14] Many of the franchise disclosure documents, which outline the policies and procedures of franchise agreements can be accessed publicly on https://fddexchange.com/view-fdd-docs.

FIRST AMENDED COMPLAINT
2:24-cv-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

protocols, directives, mandates, reporting, and expectations imposed by the G6 Defendants.

68.    G6 Defendants obscure the full extent of control they exercise over their franchisees by treating the manuals and certain policies as confidential and proprietary and prohibiting any public disclosure of those policies and manuals. Upon information and belief, the standards that G6 Defendants imposed on the Motel 6 Location Defendants:

      a.    Did not merely identify quality or outcome standards but instead specifically controlled the means, methods, and tools Motel 6 Location Defendants used at their Motel 6 locations;

      b.    Covered virtually all aspects of hotel operations, including internal operating functions;

      c.    Dictated the specific manner in which Motel 6 Location Defendants and hotel staff must carry out most day-to-day functions at their Motel 6 locations; and

      d.    Significantly exceeded what was necessary for G6 Defendants to protect its registered trademarks.

69.    In addition to the ways described above, upon information and belief, G6 Defendants exercised and reserved the right to exercise systemic and pervasive control over Franchisee Defendants' day-to-day operation of the subject Motel 6 locations named herein, including the following ways:

      a.    G6 Defendants required franchisees and management of franchised hotels to participate in mandatory training programs, both during onboarding and on an ongoing basis. This training covered all aspects of hotel operations, including aspects of hotel operations that go significantly beyond what would be necessary for G6 Defendants to protect their registered trademarks;

      b.    G6 Defendants provided training for hotel management and select hotel staff on-site at the Motel 6 locations selected by G6 Defendants;

FIRST AMENDED COMPLAINT
2:24-cv-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

c.      G6 Defendants required all hotel staff to participate in training it created through an online learning platform it controlled and maintained;

d.      G6 Defendants controlled training provided by Motel 6 Location Defendants to hotel staff by dictating the content of that training, providing required content for that training, and dictating the training methods used;

e.      G6 Defendants retained sole discretion to determine whether all training had been completed satisfactorily;

f.      For certain products and services that Motel 6 Location Defendants were required to purchase to operate the Motel 6 locations named herein, G6 Defendants designated approved vendors and prohibited the locations from purchasing goods and services from anyone other than an approved vendor;

g.      G6 Defendants required Motel 6 Location Defendants to sign a technology agreement governing the terms under which franchisees must procure and use technical services and software while operating the Motel 6 locations named herein. Motel 6 Location Defendants were required to install, and use certain brands, types, makes, and/or models of hardware, software, peripheral equipment, and support services to perform internal operating functions at the hotel;

h.      G6 Defendants set required staffing levels for the Motel 6 locations named herein;

i.      G6 Defendants established detailed job descriptions for all positions in its Motel 6 properties and drafted numerous, detailed policies that referenced these positions and dictated which positions must perform which tasks and how they must do so;

j.      G6 Defendants set requirements for the hiring process used by franchisees and oversaw employee discipline processes and termination decisions;

FIRST AMENDED COMPLAINT
2:24-cv-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

k.     G6 Defendants provided benefits for employees of the Motel 6 Location Defendants;

l.     G6 Defendants required Motel 6 Location Defendants to use a customer resource management program maintained and operated by the G6 Defendants;

m.     G6 Defendants controlled channels for guests to report complaints or provide feedback regarding the Motel 6 locations and directly participated in the response and/or supervised the response to customer complaints or other feedback. G6 Defendants retained the right to provide refunds or other compensation to guests and to require Motel 6 Location Defendants to pay associated costs;

n.     G6 Defendants generated reports and analysis of guest complaints and online reviews for the subject Motel 6 locations;

o.     G6 Defendants required Motel 6 Location Defendants to use a Guest Relations Application owned, operated, and maintained by G6 Defendants to manage all guest data and information. G6 Defendants could use the backend of this system to analyze data and generate reports;

p.     G6 Defendants set detailed requirements for insurance that Motel 6 Location Defendants must purchase and retain the right to purchase insurance for Motel 6 Location Defendants and to bill them directly for that insurance if G6 Defendants determine that they have not purchased adequate insurance;

q.     G6 Defendants regularly audited the books and records of Motel 6 Location Defendants;

r.     G6 Defendants conducted frequent and unscheduled inspections of Motel 6 properties, including the Motel 6 locations named herein;

---

FIRST AMENDED COMPLAINT
2:24-cv-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

s.    G6 Defendants retained the right to issue fines, require additional training, to impose and supervise implementation of detailed corrective action plans, and to take other steps up to and including termination of any agreements if the Motel 6 Location Defendants violated any of the G6 Defendants' detailed rules, expectations, protocols, or policies, including those that governed day-to-day operations of the Motel 6 locations named herein;

t.    G6 Defendants controlled all marketing for subject Motel 6 locations and prohibited them from maintaining any online presence unless specifically reviewed and approved by the G6 Defendants;

u.    G6 Defendants imposed detailed recordkeeping and reporting requirements on Motel 6 Location Defendants regarding virtually all aspects of hotel operations;

v.    G6 Defendants supervised and controlled day-to-day operations of the Motel 6 locations named herein through detailed information and extensive reports that it obtained through the property management system and other software systems it required Motel 6 Location Defendants to use; and

w.    G6 Defendants retained the virtually unlimited right to revise policies or adopt new requirements for the day-to-day aspects of hotel operations.

**Quality Inn Defendant and Staff Acted as Actual Agents of Choice Hotels International, Inc.**

70.    Choice Hotels International, Inc. is vicariously liable for the acts, omissions, and knowledge of Quality Inn located at 1711 W Meeker St, Kent, Washington and the staff of this location named herein, which are Choice Hotels International, Inc's actual agents or subagents.

71.    Choice Hotels International, Inc. exercises day-to-day control over the Quality Inn and its other brand hotels through centralized corporate systems, training, policies and brand standards.

FIRST AMENDED COMPLAINT
2:24-cv-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

72.     Upon information and belief, Choice Hotels International, Inc controls the operations of its branded properties through various means enforced through franchise agreements and other related contacts. Some examples of how Choice Hotels International, Inc does this are:

     a.   Gathering reports of data generated by branded locations. This includes reservation, payment, occupancy information through Choice's centralized systems;

     b.   Requiring each location to keep audit reports and other records;

     c.   Each location must use Choice's property management system;

     d.   Regular inspections to ensure compliance with agreements;

     e.   Providing marking requirements and standardized marketing services for each location;

     f.   Regulating policies and procedures;

     g.   Requiring branded hotels to use approved vendors for internet services or other requirements for Wi-Fi access and filtering;

     h.   Providing training and orientation materials for branded property staff;

     i.   Insurance coverage requirements;

     j.   Regulating room rates.[15]

73.     Choice Hotels International, Inc. manages corporate and branded property training, policies, and procedures on human trafficking, cybersecurity, guest preferences, internet access, cleanliness and other hotel brand related policies.[16]

74.     Choice Hotels International, Inc requires its branded properties to comply with its corporate polices relating to security and safety, human rights, ethics, corporate governance, and compliance with

---

[15] See Quality Inn 2022 Franchise Disclosure Document, https://fddexchange.com/view-fdd-quality-inn-2022-fdd-franchise-information

[16] Why Choice?, Why Choice Hotels - Choice Hotels Development (last visited Aug 8, 2024).

FIRST AMENDED COMPLAINT
2:24-cv-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

the law.[17]

75.    Choice gathers data from its customers including names, payment information, reservation history, browsing data, and other details associated with stays.[18]

**Parent Hotel Defendants Knowingly Benefited from Participation in a Venture with Their Franchisee Locations**

76.    Hotel brands own properties and lend their name and likeness to third party owners, while the building and operations are under the brands' supervision and control. This is done through brand standards, franchise agreements, and maintaining control over all aspects of operations. This allows the parent brand to exchange the high risk that is inherent in owning an asset like a hotel for the low risk associated with owning a local property or franchise contract and still profit. Because of this, the hotel locations and parent brands—here G6 Defendants and Motel 6 Location Defendants; and Choice Hotels International, Inc and Quality Inn or NITSI, LLC—are inextricably intertwined.

77.    The average customer does not see this relationship. The parent brand gives the franchisee property its identity. The parent brand provides the signage that assures customers that if they check into that hotel they can expect the standards consistent with the parent brand. The parent companies – G6 Defendants and Choice Hotels International—hold themselves out to the public as the owners of the property. These brand requirements are contractual with the power to control weighed heavily toward the corporate parent brand.

78.    At all times of trafficking alleged herein and currently, booking and room reservations are controlled by the corporate parent brand.[19]

---

[17] See *Human Rights Policy*, Human Rights Policy Statement - Choice Hotels International  (last visited Aug 8, 2024).
[18] Choice Hotels International, Inc. *Privacy and Security,* Choice Hotels Privacy and Security Policy (last visited Aug 8, 2024).
[19] Meyer, Ellen, April 10, 2018. *The Origins and Growth of Franchising in the Hotel Industry.* Lodging Magazine.

FIRST AMENDED COMPLAINT
2:24-CV-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

79.    Upon information and belief, at all times of trafficking alleged herein and currently, the franchised hotels, typically pays a percentage of their total revenue back to the parent company and is required to develop and maintain the property in accordance with the parent brand's standards as they are laid out in the franchise agreement.

80.    Upon information and belief, per the franchise agreements, the Parent Hotel Defendants, may enforce standards through periodic inspections and even termination of the franchise agreement if the franchise hotel is found to be inadequate. The right of the Parent Hotel Defendants to enforce their brand standards, including safety standards, is not just their right but their responsibility.

81.    At all times of trafficking alleged herein, Parent Hotel Defendants dictated franchisee policies related to safety, security, human trafficking, employee training and franchisee's response.

82.    Upon information and belief, at all times of trafficking alleged herein, reservation information for rooms at the subject motels passed through a system operated and managed by the parent companies—G6 Defendants and Choice Hotels International, Inc.

83.    Defendants profited from the sex trafficking of Plaintiff when they rented rooms to Plaintiff and/or her trafficker when they knew or should have known that human trafficking was occurring.

84.    Defendants benefited from the steady stream of income that Plaintiff's trafficker brought to their hotels and hotel brands. Defendants profited from each and every room that Plaintiff's trafficker rented where Plaintiff was harbored and maintained for the purpose of sex trafficking.

85.    Defendants facilitated the trafficking through its practices, policies, and procedures. They failed to take appropriate action to prevent the trafficking of individuals, including Plaintiff, for sex so they could continue to profit from the room rentals, and business that trafficking brings.

86.    Parent Hotel Defendants and Hotel Defendants owned and operated the subject properties while buyers paraded in and out of rooms rented for the purpose of trafficking Plaintiff. Their employees and

FIRST AMENDED COMPLAINT
2:24-CV-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

agents observed and should have observed the buyers parading in and out of its hotel rooms to engage in the sex trafficking of Plaintiff. Their employees and agents observed or should have observed the trafficking occurring regularly and for multiple days at a time at the subject hotel locations but ignored it so they could profit.

87.    Plaintiff's trafficking at the subject hotel locations was a result of Parent Hotel Defendants' and Hotel Defendants' participation in a venture with each other and criminal traffickers. If Parent Hotel Defendants and Hotel Defendants had not continued participating in a venture that they knew or should have known violated 18 U.S.C. §1591(a), they would not have received a benefit from Plaintiff's trafficking at the subject hotel locations.

88.    Despite its actual or constructive knowledge that the venture it was engaged in was in violation of 18 U.S.C. §§1591(a), and 1595(a) through the conduct of hotel staff and the widespread trafficking at the subject hotel locations named herein, Parent Hotel Defendants participated in the venture by continuing to associate with the hotel staff and with other Hotel Defendants to operate the hotel locations named herein in a way that it knew or should have known would lead to further violations of 18 U.S.C. § 1591(a) including trafficking of victims like Plaintiff.

89.    Parent Hotel Defendants and Hotel Defendants financially benefitted from renting hotel rooms to Plaintiff and Plaintiff's trafficker on numerous occasions.

90.    Parent Hotel Defendants participated in this venture through the conduct described herein as they were jointly responsible for relevant aspects of hotel operations.

**Hotel Defendants Facilitated Trafficking of Plaintiff**

91.    Hotel Defendants had both actual and constructive knowledge of the trafficking of Plaintiff at the hotel locations they owned and operated because the trafficking was the direct result of Hotel Defendants facilitating her trafficking at the subject locations.

FIRST AMENDED COMPLAINT
2:24-cv-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

92.     Hotel Defendants are responsible for the acts, omissions, and knowledge of all employees of the subject hotel locations when operating the hotel because these acts and omissions were committed in the course and scope of employment. Hotel Defendants ratified these acts and omissions because Hotel Defendants failed to exercise reasonable care in the hiring, training, and supervision of these employees given the specific risks known and reported to Hotel Defendants of sex trafficking occurring that the subject hotel locations.

93.     Despite having actual or constructive knowledge of widespread and ongoing sex trafficking at the subject locations, Hotel Defendants continued renting rooms to traffickers, including the rooms used to sexually exploit Plaintiff and other victims.

94.     Hotel Defendants knew or were willfully blind to the fact that Plaintiff was being trafficked and, despite this, benefited from continued association with her trafficker by providing them with a venue in the form of hotel rooms and related services, to harbor and facilitate Plaintiff's sexual exploitation.

95.     Hotel Defendants also facilitated widespread trafficking at their hotel locations, including the trafficking of Plaintiff in ways including:

a. Allowing inappropriate and inadequate practices for hiring, training, supervising, managing and disciplining front line staff regarding issues related to human trafficking;

b. Inadequate and inadequately enforced sex trafficking notice and training for hotel staff;

c. Choosing not to report known or suspected criminal activity including sex trafficking according to reasonable practices, industry standards, laws, and/or applicable franchisor policies and procedures; and

d. Implicitly encouraging the activities of traffickers by creating an environment where they did not need to incur the burden of taking significant steps to conceal their activities but, instead, could operate without concern for detection or interference by the hotel staff.

FIRST AMENDED COMPLAINT
2:24-cv-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

**Parent Hotel Defendants Facilitated the Trafficking of Plaintiff at the Hotel Defendant Locations**

96.    Upon information and belief, during the times Plaintiff was trafficked at the subject properties, Parent Hotel Defendants participated directly in aspects of the operation of those subject hotels that influenced whether and to what extent trafficking offered at the hotels, including but not limited to the trafficking of Plaintiff as follows:

a.    Parent Hotel Defendants assumed responsibility and control over the human trafficking response of their subject motel properties, including design and implementation of practices to prevent trafficking, safety, and security procedures, employee, and franchisee education, training and response, partnership with external organizations, and advocacy;

b.    Parent Hotel Defendants retained control over when its branded hotels would share information with law enforcement and when law enforcement would be contacted about suspected criminal activity in their branded hotel locations;

c.    Parent Hotel Defendants retained control over determining which hotels needed additional training or other resources on the risk of trafficking occurring and other related criminal activity;

d.    Parent Hotel Defendants retained control to terminate hotel staff and/or a franchising agreement based on the response to human trafficking;

e.    Parent Hotel Defendants determined whether the training is provided, when it is provided, the content of the training, how the training is delivered, who receives it, and the consequences of someone not participating or failing to follow such training; and

f.    Parent Hotel Defendants retained control over setting, supervision, overseeing, and enforcement policies and procedures for housekeeping services at the subject motel locations,

FIRST AMENDED COMPLAINT
2:24-cv-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

including how often rooms must be entered, how to respond to guest refusals of entry into rooms, and steps to monitor guest safety issues through housekeeping services.

97.    As a direct and proximate result of these egregious practices on the part of the Parent Hotel Defendants, Plaintiff and victims of sex trafficking and exploitation have been permanently injured and damaged physically, emotionally, psychologically, and financially.

**Defendants' Knowledge of Sex Trafficking at Their Locations**

98.    Defendants' knowledge is not limited to a general awareness of the problem of sex trafficking in the hotel industry. Defendants have known, since well before the named Plaintiff was trafficked, that sex trafficking was ongoing and widespread at their branded properties, including the subject properties named herein.

99.    Use of the Parent Hotel Defendants' branded properties for sex trafficking is well known to Defendants. Upon information and belief, before and at the time Plaintiff was trafficked at the subject Hotel Defendant location properties, each of the Hotel Defendants monitored criminal activity occurring at the branded hotels and were aware of activity indicating commercial sex, sex trafficking, and related crimes occurring at those branded hotels, including the specific hotel properties where Plaintiff was trafficked.

100.    Defendants knew staff at its branded properties were facilitating sex trafficking and that it was generating revenue through policies that encouraged sex traffickers to operate at their brand properties, including but not limited to not implementing policies and procedures known to be necessary to stop known trafficking; not requiring identification cards or "IDs"; allowing daily payments of cash for extended stays; complying with requests for rooms to be rented away from other guests; allowing traffickers to escort bruised and battered women to rooms without IDs; allowing several buyers to come in and out of the rooms victims were trafficked in without ID; ignoring yelling and screaming from

FIRST AMENDED COMPLAINT
2:24-CV-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

rooms where trafficking took place; ignoring obvious copious amounts of sex paraphernalia; not addressing the trafficking signs and reports of drugs, abuse and prostitution; forming relationships with traffickers and treating traffickers like "regulars" with benefits by accommodating specific requests that entail known signs of trafficking and not reporting the trafficking or taking any steps to prevent or stop it.

101.    Defendants have access to reviews left by guests on websites wherein guests frequently complain about the prevalence of obvious trafficking, hearing physical violence by traffickers, and other signs of trafficking.

102.    Information that has become public through news stories establishes the entrenched and pervasive nature of Defendants' role in providing a venue where sex trafficking has continued unabated for years. Defendants have provided the means necessary for traffickers to traffic victims, including Plaintiff.

103.    During the period Plaintiff was trafficked at the subject locations named herein, there were obvious signs that her trafficker was engaged in sex trafficking.

104.    Other girls were trafficked at the same hotels at the same time as Plaintiff.

105.    Plaintiff's trafficker was often present with Plaintiff at check in and would linger around the hotel or in the parking lot while Plaintiff was forced to have sex with customers at the subject hotels. This was all in plain sight of Defendants' employees at the subject locations. Plaintiff's trafficker could be seen leaving the room when another male arrived and then returning as soon as that male left. This would happen multiple times a day, every day, for years.

106.    There was heavy foot traffic in and out of the rooms where Plaintiff was being harbored. This foot traffic involved men who were not hotel guests. Several men came in and out of the subject hotel rooms in a single day. These individuals entered and left at unusual hours and were present at the hotel

FIRST AMENDED COMPLAINT
2:24-cv-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

for brief periods of time. Their comings and goings were visible to hotel employees that were located at front desks and around the property. A reasonable hotel would have seen these regular "red flag" interactions at their property in plain sight and Defendants should have seen it by and through their employees and agents.

107.    There were obvious signs of trafficking consistent with trafficking and which included well known "red flags" for trafficking in a hotel, such as condoms, sex paraphernalia, and lingerie. These things were not only visible to but must have been seen by hotel employees entering and cleaning the rooms or even just collecting the trash.

108.    When forced and coerced into coming and going from the subject motel locations, Plaintiff looked unhealthy, unhappy, abused, and scared. Her trafficker and/or associates were always watching her, and her noticeable demeanor was visible to hotel employees they passed by.

109.    Upon information and belief, multiple employees at the subject hotel locations named herein, including management-level employees, observed, or were made aware of these obvious signs of trafficking while acting within the scope and course of their employment.

110.    As such, Defendants knew or were willfully blind to the fact that Plaintiff was being trafficked at the subject motel locations named herein.

111.    A brief examination of just a handful of examples for each Defendant suffices to show the extraordinary frequency with which Defendants have long received and continue to receive evidence and reports that human trafficking is a known issue at their hotel locations.

## 1. G6 Defendants and Motel 6 Location Defendants' Knowledge of Sex Trafficking at Their Locations

112.    A Los Angeles Motel 6 became such a hub for human trafficking and other criminal activity that G6 Defendants paid to settle a public nuisance lawsuit related to such trafficking filed by the City of Los

FIRST AMENDED COMPLAINT
2:24-cv-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

Angeles.[20]

113.    The Los Angeles nuisance settlement required G6 Defendants to change policies that were facilitating sex trafficking.[21] G6 Defendants knew from that lawsuit, from many prior lawsuits, and from their personal knowledge about sex trafficking at their properties that their policies were facilitating sex trafficking. Based on information and belief, at all times relevant in this Complaint and currently, G6 Defendants have failed to adequately implement and enforce such changes.

114.    Public statements of G6 Defendants confirm that they knew before and during the sex trafficking of Plaintiff that sex trafficking is a problem in the hotel industry, sex trafficking was occurring at their branded hotels, and that they retained control over the response of their branded hotels to this problem. G6 Defendants recognized that "[t]raffickers often use hotels and motels for sex trafficking activities due to the privacy extended to guests."[22] They also acknowledged the significant role G6 Defendants have in the three D's: deterring, detecting, and disrupting sex trafficking in their branded hotels. [23]

115.    G6 Defendants acknowledge on its website that it controls the policies, procedures, training, and codes of conduct that have facilitated sex trafficking at its Motel 6 Brand hotels, including the subject Motel 6 Location Defendants' properties where Plaintiff was trafficked and abused.[24]

116.    G6 Defendants acknowledge on its website that it controls the policies, procedures, training, and codes of conduct that have facilitated sex trafficking at its branded hotels. [25]

117.    Among some of the notable press involving frequent use of G6 hotels for illegal trafficking

---

[20]    Motel 6 pays $250,000 to settle human trafficking suit (Aug. 31, 2017), https://www.cbsnews.com/news/motel-6-pays-250000-to-settle-human-trafficking-suit/.
[21] Id.
[22]    G6 HOSPITALITY ANTI-HUMAN TRAFFICKING TRAINING, http://g6propertycollateral.com/wp-content/uploads/2020/02/G6_TheRoomNextDoor_Training_V12b_NoFacilitator.pdf
[23] Id.
[24] https://g6hospitality.com/combating-human-trafficking/
[25] Id.

FIRST AMENDED COMPLAINT
2:24-cv-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

activity, the following was noted:

a. In late 2003, a trafficker set up a sex trafficking venture at a Motel 6 in Connecticut in which two (2) young women were sold for sex eight (8) to ten (10) times per day.[26]

b. In April 2009, a sex trafficking venture operated out of a Motel 6 in Toledo, Ohio.[27]

c. In approximately September 2011, sex traffickers set up an operation at a Motel 6 in Toledo, Ohio to sell fifteen (15) and sixteen (16) year old girls for sex.[28]

d. From approximately 2012 through October 2014, two (2) men engaged in a criminal sex trafficking venture of children which operated in part out of a Motel 6 in Harvey, Illinois.[29]

e. Police rescued an eighteen (18) year old girl from a sex trafficker in February 2012, at a Motel 6 in Portland, Oregon.[30]

f. The FBI investigated and arrested several individuals in December 2012, for the victimization and human trafficking of several young women and a juvenile at a Motel 6 in Madison, Alabama.[31]

g. The Orange County Human Trafficking Task Force busted a criminal enterprise in December 2012 that was selling women for sex out of a Motel 6 in Anaheim, California.[32]

---

[26] Amy Fine Collins, Sex Trafficking of Americans: The Girls Next Door, Vanity Fair (May 2011), https://www.vanityfair.com/news/2011/05/human-trafficking.

[27] Five Toledoans Indicted On Sex Trafficking Charges, ABC7Chicago.com (Nov. 7, 2010), https://abc7chicago.com/archive/7771888/.

[28] Mark Reiter, Two Toledoans Accused Of Juvenile Sex Trafficking, The Blade (Jun. 1, 2010), https://www.toledoblade.com/Courts/2012/06/02/2-Toledoans-accused-of-juvenile-sex-trafficking-1.html

[29] Press Release, U.S. Dept. of Justice, Two Aspiring Rappers Charged With Operating Sex-Trafficking Ring In Chicago And Suburbs (Jan. 15, 2016), https://www.justice.gov/usaondil/file/813771/download.

[30] Press Release, U.S. Dept. of Justice, Tacoma Pimp Sentenced To 25 Years For Sex-Trafficking Two Victims (Nov. 20, 2013), https://www.justice.gov/usao-or/pr/tacoma-pimp-sentenced-25-years-sex-trafficking-two-victims.

[31] FBI Investigates Human Trafficking At Madison Hotel, WHNT News 19 (Dec. 7, 2012), https://whnt.com/2012/12/07/fbi-investigates-human-trafficking-at-madison-motel/.

[32] Suspects Busted in Anaheim Sex Ring, ABC13 Eyewitness News (Dec. 5, 2012), https://abc13.com/archive/8909784.

FIRST AMENDED COMPLAINT
2:24-CV-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

h. Two men were arrested in March 2015 for sex trafficking a fifteen (15) year old girl at Motel 6 in Austin, Texas.[33]

i. In March 2015, police arrested a man for sex trafficking a runaway seventeen (17) year old at a Motel 6 in Warwick, Rhode Island.[34]

j. Over a fourteen (14) month period ending in approximately April 2015, at the same Motel 6 in Warwick, Rhode Island had seventy-five (75) arrests on its property for crimes including sex-trafficking.[35]

k. Seven (7) people were indicted in January 2016, by a Colorado grand jury for sex trafficking children from 2014 through the summer of 2015, out of hotels in Denver, Colorado, including a Denver area Motel 6.[36]

l. In the summer of 2015, a woman was arrested at a Motel 6 in Great Falls, Montana where she was involved in sex trafficking a seventeen (17) year old girl.[37]

m. A married couple was indicted in June 2015, for their roles in sex trafficking minor children ages seventeen (17), sixteen (16), and fifteen (15) years old out of a Motel 6 in Everett, Washington.[38]

---

[33] Lindsay Bramson, Local Teen Saved from Sex Slavery; Two Charged, KXAN Austin (Mar. 6, 2015), https://www.kxan.com/news/local/austin/local-teen-freed-from-sex-slavery-two-charged/1049580764.

[34] Amanda Milkovits, Massachusetts Man Accused of Trafficking Teen In Warwick Motel, NewportRI.com (Mar. 24, 2015), https://www.newportri.com/article/20150324/NEWS/150329666.

[35] Sarah Kaplan, Crime-Ridden Motel 6 In R.I. Will Hand Over Guest List To Police, The Washington Post (Apr. 28, 2015)https://www.washingtonpost.com/news/morning-mix/wp/2015/04/28/crime-ridden-motel-6-in-r-i-will-hand-over-guest-list-to-police/?utm_term=.a804ce3f32a8.

[36] Hsing Tseng, Seven Indicted by Colorado Grand Jury In Child Sex Trafficking Ring Bust, Fox 31 Denver (Jan. 6, 2016), https://kdvr.com/2016/01/06/7-indicted-by-colorado-grand-jury-in-child-sex-trafficking-ring-bust/.

[37] Andrea Fisher, Woman Caught Up In Human Trafficking Ring Pleads Guilty (Aug. 29, 2016), https://www.greatfallstribune.com/story/news/local/2016/08/29/woman-caught-human-trafficking-ring-pleads-guilty/89566374/.

[38] Diana Hefley, County Investigating 45 Ongoing Human Sex Trafficking Cases, Herald Net (Jun. 26, 2015), https://www.heraldnet.com/news/county-investigating-45-ongoing-human-sex-trafficking-cases/.

FIRST AMENDED COMPLAINT
2:24-cv-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

n.  In Tuscaloosa, Alabama police rescued a fourteen (14) year old girl from a Motel 6 in June 2015, and a grand jury subsequently charged her assailant with human trafficking and rape.[39]

o.  In approximately July 2015, sex traffickers sold a fifteen (15) year old girl for sex at a Motel 6 in Pismo Beach, California.[40]

p.  In approximately March 2013, sex traffickers began operating a sex trafficking venture out of Motel 6 locations in Bangor and Portland, Maine.[41]

q.  Beginning in approximately May 2013, a fifteen (15) year old runaway was trafficked for sex out of the Motel 6 on Caton Avenue in Baltimore, Maryland.[42]

r.  In Richmond County, Georgia a man was arrested at a local Motel 6 in October 2013 and charged with sex trafficking of two young women.[43]

118.  This sampling of news stories, reviews, and other public information establishes that, at the time Plaintiff was trafficked at the subject properties, G6 Defendants and Motel 6 Location Defendants knew or should have known that:

a.  There was widespread and ongoing sex trafficking occurring at the G6 branded properties;

b.  Sex trafficking was a brand-wide problem for G6 Defendants;

c.  G6 franchisees and hotel staff were not taking reasonable steps to identify, report, and respond to known or probable sex trafficking occurring at their hotel properties and were

---

[39] Tuscaloosa Man Charged With Rape And Trafficking Mississippi Teen, News Mississippi (Nov. 7, 28 2014), https://newsms.fm/tuscaloosa-man-charged-human-trafficking-mississippi-teen/.

[40] Matt Fountain, Four Accused Of Pimping Out 15-Year-Old Girl In SLO Will Stand Trial, SanLuisObispo.com (May 5, 2016), https://www.sanluisobispo.com/news/local/article75832962.html.

[41] Danielle McLean, What Drives Maine Sex Traffickers' Inhumanity, Bangor Daily News Maine Focus (Sept. 12, 2016), https://bangordailynews.com/2016/09/12/mainefocus/what-drives-maine-sex-traffickers-inhumanity/.

[42] Anne Kramer, Man Faces Prison Time For Sex Trafficking Baltimore Teen, WBAL News Radio (Apr. 10, 2014), https://www.wbal.com/article/106578/2/man-faces-prison-time-for-sex-trafficking-baltimore-teen.

[43] UPDATE: Man Arrested For Sex Trafficking, WRDW.com On Your Side, (Oct. 3, 2013), https://www.wrdw.com/home/headlines/Man-arrested-for-sex-trafficking-226301261.html.

FIRST AMENDED COMPLAINT
2:24-cv-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

facilitating sex trafficking and harboring trafficking at the branded hotel properties; and

d.  G6 and its franchisees were earning revenue by providing venues where widespread and ongoing sex trafficking was occurring.

119.   G6 Defendants and Motel 6 Location Defendants were specifically aware that sex trafficking was widespread and ongoing at the subject Motel 6 locations.

120.   Internet reviews for the subject Motel 6 locations named herein, which G6 Defendants and Motel 6 Location Defendants managed, controlled, and monitored, show the pervasiveness of sex trafficking before and after Plaintiff was trafficked. Here are just a few examples:

- Motel 6 located at 20651 Military Rd S., Seattle, WA 98188

    o  August 2016 Yelp review "…Lots of shady-looking people walking around and some young kid in a "uniform" walking the premises that was supposed to be "security," yet he made us feel even more uncomfortable."[44]

    o  July 2014 Yelp review "Cops were there every night."[45]

    o  2017 Trip Advisor review "Very sketchy people outside hanging out in the parking lot late at night. Drug dealing?? First time here in Seattle and not a good choice for a hotel. Girl at the desk not too friendly."[46]

    o  2018 Yelp review "Every kind of criminal you ever heard of lodges here. Heroin and meth are sold from certain rooms or in the parking lot. There are always hookers around…"[47]

- Motel 6 located at 16500 Pacific Highway, Seattle, WA 98188

---

[44] https://www.yelp.com/biz/motel-6-seattle-south-seatac?start=70
[45] https://www.yelp.com/biz/motel-6-seattle-south-seatac?start=70
[46] MOTEL 6 SEATTLE SOUTH - Prices & Reviews (SeaTac, WA) (tripadvisor.com)
[47] https://www.yelp.com/biz/motel-6-seattle-south-seatac?start=10&rr=1

FIRST AMENDED COMPLAINT
2:24-cv-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

o   2013 Yelp review "…AVOID THIS PLACE unless you are a crackhead, meth freak, prostitute or are looking to be violated in some way. I honestly can't believe this passes for a motel, as the majority of the people wandering the halls during my stay were DEFINITELY there for reasons other than just needing a place to stay."[48]

o   2018 Trip Advisor review states: "I'm a recent retired LTC from the US ARMY (AOC J.A.G.) and cancer patient, who stayed at this Motel 6 for a total of 10 weeks . . Racism, preferential treatment, fraud, drug/prostitution activity, and lack of integrity all seem to be issues caused by/exacerbated by these employees. . . I'd look elsewhere if the choice is yours, if not ... sleep with one eye open!

o   2015 Yelp review 8 states: "I'm pretty sure that this motel is a staging area for prostitution. Seems like some gals were staying here with their pimps. The area is notorious for prostitution. That said, the rooms looked new and we're clean. The staff was friendly. It's good for a night if you have an early flight out of Seatac."[49]

o   2015 Yelp review states: "There's a whole bunch of people in and out of this motel, walking around, driving around mind you these people aren't even staying at the hotel, they'll look at you weird and make you feel super uncomfortable."[50]

o   2013 Yelp review states: "here were prostitutes swarming around, one of which knocked on our door while we were packing. My husband said, "who is it?" and the cracking voice on the other side of the door said, 'Summer.'"[51]

- Motel 6 located at 18900 47th Avenue, Seattle, WA 98188

---

[48] https://www.yelp.com/biz/motel-6-seattle-seattle
[49] https://www.yelp.com/biz/motel-6-seattle-airport-seattle?start=30
[50] https://www.yelp.com/biz/motel-6-seattle-airport-seattle?start=70
[51] https://www.yelp.com/biz/motel-6-seattle-airport-seattle?start=40

34

- o 2017 Trip Advisor review states "Our room was very noisy most of the night and the beds were very uncomfortable. Drug dealers and prostitutes were staying at the hotel. By this time it was dark and I did not feel safe going outside so I locked the door and stayed for the night and hoped for the best. It felt very unsafe. DO NOT STAY AT THIS HOTEL. Next morning I was just grateful to be alive and that my car had not been broken into or stolen."[52]

- o 2016 Trip Advisor review states "The motel is overpriced for what you get, and while I was there a few days I saw shady characters all around, a guy sleeping in his car in the parking lot, a prostitute enter the motel for her "work," druggies, and some yelling in the hallways."[53]

- o 2016 Trip Advisor review states "Checked into the room with strange people lurking around. I thought with best hopes that maybe they were secretly filming a zombie movie. But then I realized it was just people most likely high on heroin bumping into the walls cuz they couldn't find their rooms. The prostitutes outside my window yelling at me their prices. . ."[54]

- o 2015 Yelp review states "…and like other reviews mentioned.. we did see some prostitutes in the parking lot.. DEFINITELY STAY AWAY!"[55]

- o 2015 Yelp review states "We had the joy of having to listen to a prostitute bang everyone, after she was finished with her sexual marathon one of the men was drunk

---

[52] https://www.tripadvisor.com/Hotel_Review-g58732-d243759-Reviews-or50-Motel_6_Seattle_WA_Sea_Tac_Airport_South-SeaTac_Washington.html
[53] https://www.tripadvisor.com/Hotel_Review-g58732-d243759-Reviews-or50-Motel_6_Seattle_WA_Sea_Tac_Airport_South-SeaTac_Washington.html
[54] https://www.tripadvisor.com/Hotel_Review-g58732-d243759-Reviews-or60-Motel_6_Seattle_WA_Sea_Tac_Airport_South-SeaTac_Washington.html
[55] https://www.yelp.com/biz/motel-6-seattle-seattle?start=70

FIRST AMENDED COMPLAINT
2:24-cv-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

and returned to her room demanding money, a woman in a neighboring room stepped out and told them to shut up or she'd call the police, a brawl broke out and they were all arrested."[56]

121.    G6 Defendants and Motel 6 Location Defendants knew Plaintiff was being trafficked at the locations named herein by the many red flags present during their continued stays. Plaintiff's trafficker paid for stays in cash, oftentimes was not required to present ID, paid for extended stays on a day-to-day basis, requested rooms away from other guest and/or the front desk, obvious signs of illegal drug use, obvious visible signs of physical abuse, do not disturb signs always up, frequent requests for new linens and towels but not letting cleaning staff into the rooms, men waiting out of the room while other men were inside with Plaintiff for short periods of time.

122.    The calls for service for law enforcement at each one of the Motel 6 locations named herein show just how much criminal activity was taking place at these specific locations. These calls for service include but are not limited to multiple calls for suspicious circumstances, prostitution, suspicious vehicles, domestic violence, battery, sexual assault, threats, disturbances, and welfare checks. These calls for service would have put Motel 6 Location Defendants as well as G6 Defendants on notice of the crimes occurring at their properties.

123.    The Motel 6 located at 20651 Military Road S, Seatac, Washington was owned and operated by G6 Hospitality Property, LLC during the time of Plaintiff's trafficking. One of the maintenance workers at this location was a "customer" of Plaintiff's. The maintenance worker would go through Plaintiff's trafficker and pay him money in exchange for sex and/or sexual acts with Plaintiff.

124.    There was a male security guard who worked at the Motel 6 located at 20651 Military Road S, Seatac, Washington who was friendly with all of the traffickers who stayed there. He would protect them

---

[56] https://www.yelp.com/biz/motel-6-seattle-seattle?start=30

FIRST AMENDED COMPLAINT
2:24-cv-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

and the rooms they would rent. It is believed that this security guard lived at this location, right behind the front office.

125.    The Motel 6 located at 20651 Military Road, Seatac, Washington had cameras throughout the motel property. These cameras had monitors at the front desk that were monitored or supposed to be monitored by hotel staff, owners, and managers.

126.    All of the rooms that Plaintiff and her trafficker would stay in at the Motel 6 located at 16500 Pacific Highway South, Seattle, Washington were in plain view of the front office. They were all located out front and very close to the front desk. The staff at this location would have seen traffic going in and out of the hotel at all times of the day and night. They would have seen people who were not registered guests coming in and out of the Plaintiff's room.

127.    The Motel 6 located at 16500 Pacific Highway South, Seattle, Washington had cameras throughout the motel property. These cameras had monitors at the front desk that were monitored or supposed to be monitored by hotel staff, owners, and managers.

128.    The Motel 6 located at 18900 47th Ave S, Seattle, Washington had a young female worker at the front desk, who would check Plaintiff and her trafficker in each time. She would have recognized Plaintiff and her trafficker returning multiple times and would have picked up on the demeanor of Plaintiff.

129.    The Motel 6 located at 18900 47th Ave S, Seattle, Washington had cameras throughout the motel property. These cameras had monitors at the front desk that were monitored or supposed to be monitored by hotel staff, owners, and managers.

   **2.    Choice Hotels International, Inc. and Quality Inn Hotel Defendants' Knowledge of Sex Trafficking at Their Location**

FIRST AMENDED COMPLAINT
2:24-cv-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

130.    Choice Hotels International, Inc. has also put out several public statements over the past ten to fifteen years indicating they know that sex trafficking is a problem in the hotel industry and at their hotels and claiming they are committed to fight against it.

131.    Despite reports, police activity and investigation of trafficking, and the direct knowledge of trafficking at the subject Choice branded property, Choice did not change its ways or policies and procedures no matter how many people it hurt.

132.    Choice has been named in numerous civil lawsuits arising out of sex trafficking at their properties, including during the time of trafficking of Plaintiff in this case, which puts Choice on further notice to the sex trafficking.

133.    Internet reviews for the subject Quality Inn location named herein, which Choice and Quality Inn Defendants reviewed, read, managed, controlled, and monitored show the pervasiveness of drugs and activity consistent with trafficking before and during the time Plaintiff was trafficked. Here are just a few examples:

- 2015 Google review states "Just awful! I called the customer svc line and let them know how badly this hotel represented Choice and they didn't care at all."

- 2015 Google review states "Location very seedy, access to all doors 24/7 without needing to scan card."

- 2015 Google review states "Staying in room 224? 1) Find the condoms behind the TV- Reported and there for 3 days."

- 2013 Google review states "This was not a relaxing stay, what must be noted in this review is that it is in an awful neighborhood, we were approached a number of times by hoodlum individuals, couples were fighting in the hallway, there were what I could assume were gang members in the parking lot, I was so nervous it was hard to sleep and I am by no means a sheltered

FIRST AMENDED COMPLAINT
2:24-cv-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

individual. The bathroom was dirty, the pillow was ripped and stained, and you could hear arguing and yelling from multiple people all night and early into the morning. Definitely not a place for young children."

134.    Choice and the named Quality Inn Location Defendant knew Plaintiff was being trafficked at the location named herein by the many red flags present during her continued stays. Plaintiff's trafficker paid for stays in cash, oftentimes was not required to present ID, paid for extended stays on a day-to-day basis, requested rooms away from other guest and/or the front desk, obvious signs of illegal drug use, obvious visible signs of physical abuse, do not disturb signs always up, frequent requests for new linens and towels but not letting cleaning staff into the rooms, men waiting out of the room while other men were inside with Plaintiff for short periods of time.

135.    The calls for service for law enforcement at the Quality Inn location named herein show just how much criminal activity was taking place at this specific location. These calls for service include but are not limited to multiple calls for suspicious circumstances, prostitution, suspicious vehicles, domestic violence, battery, sexual assault, threats, disturbances, and welfare checks. These calls for service would have put Quality Inn Defendant as well as Choice Hotels International, Inc. on notice of the crimes occurring at their property.

136.    Plaintiff's trafficker would give the owner and/or manager extra money to allow him to have visitors past 11:00 at night. The owner/manager would allow the trafficking of Plaintiff to occur at the Quality Inn located at 1711 W Meeker St, Kent, Washington in exchange for money.

137.    The owner/manager and his family were always at the Quality Inn located at 1711 W Meeker St, Kent and would see Plaintiff and her trafficker when they would check in and throughout their stay.

138.    The Quality Inn located at 1711 W Meeker St, Kent, Washington had cameras throughout the motel property. These cameras had monitors at the front desk that were monitored or supposed to be

FIRST AMENDED COMPLAINT
2:24-cv-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

monitored by hotel staff, owners, and managers.

**Defendants are Jointly Responsible for the Trafficking of Plaintiffs**

139.    Parent Hotel Defendants and their subject Hotel Defendants were participants in a joint venture with each other, which involved a common enterprise, profit-sharing, a community of interests, and joint rights of control and management, and are vicariously liable for the violations of the other participants in the joint venture.

140.    Upon information and belief, the operation of the subject Motel 6s was part of a single unified operation by G6 Defendants. Upon information and belief, the subject Motel 6 locations shared common parent companies, were subject to joint control, and operated as an integrated enterprise and/or as alter-egos. Upon information and belief, G6 Defendants acted jointly to own, operate, control, manage, and supervise the subject Motel 6 locations. As an integrated enterprise and/or joint venture, G6 Defendants and Motel 6 Location Defendants were separately and jointly responsible for compliance with all applicable laws.

141.    Upon information and belief, the operation of the subject Quality Inn was part of a single unified operation by Choice Hotels International, Inc. Upon information and belief, Quality Inn had a parent company, was subject to joint control, and operated as an integrated enterprise and/or as an alter-ego. Upon information and belief, Choice Hotels International, Inc acted to own, operate, control, manage, and supervise the subject Quality Inn location. As an integrated enterprise and/or joint venture, Choice Hotels International, Inc and the subject Quality Inn location were separately and jointly responsible for compliance with all applicable laws.

**Defendants are Jointly and Severally Liable for Plaintiffs' Damages**

142.    The venture or ventures in which each Defendant participated were direct, producing, and proximate causes of the injuries and damages to Plaintiff.

FIRST AMENDED COMPLAINT
2:24-cv-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

143.    Under the TVPRA, Defendants are jointly and severally liable for all damages that a jury awards to Plaintiff for past and future losses they suffered as a proximate result of their sexual exploitation and trafficking.

## CAUSES OF ACTION AGAINST DEFENDANTS

**Sex Trafficking under 18 U.S.C. § 1595**

1. **Cause of Action: Perpetrator liability under 18 U.S.C §1595(a) based on violation of 18 U.S.C §1591(a)**

144.    Plaintiff realleges and incorporate the allegations in paragraphs 1 through 143.

145.    Plaintiff is a victim of sex trafficking within the meaning of §1591 and 1595(a) and is thus entitled to bring a civil action under 18 U.S.C §1595(a) against the "perpetrator" of any violation of the TVPRA.

146.    Defendants are perpetrators within the meaning of 18 U.S.C §1595(a) because they:

   a.    Violated 18 U.S.C §1591(a)(1) when, through the acts and omissions described throughout this Complaint, they harbored individuals, including Plaintiff, knowing or in reckless disregard of the fact that the victims would be caused, through force, coercion, or fraud, to engage in commercial sex acts while at its respective hotel property; and

   b.    Violated 18 U.S.C §1591(a)(2) when, through the acts and omissions described throughout this Complaint, it knowingly received financial benefit by knowingly assisting, supporting, or facilitating a venture that was engaged in violations under 18 U.S.C §1591(a)(1) at its respective hotel properties.

147.    Violations of 18 U.S.C §1595(a) by each of the Defendants as "perpetrators" operated, jointly, with other unlawful acts and omissions alleged in this Complaint, to cause Plaintiff to suffer substantial

FIRST AMENDED COMPLAINT
2:24-cv-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

physical and psychological injuries and other damages as a direct and proximate result of being trafficked and sexually exploited at the Defendants' hotel properties.

**2. Beneficiary Liability under §1595 (a) of the TVPRA (all Defendants).**

148.    Plaintiff realleges and incorporate the allegations in Paragraphs 1 through 143, and 144 through 147.

149.    Plaintiff is a victim of sex trafficking within the meaning of 18 U.S.C §§ 1591 and 1595(a) and is thus entitled to bring a civil action under the "beneficiary" theory in 18 U.S.C §1595(a) against anyone who knowingly benefited from participation in a venture that the person knew or should have, with reasonable diligence, known was engaged in a violation of the TVPRA.

150.    Through acts and omissions described throughout this Complaint, Defendants received a financial benefit from participating in a venture with each other and traffickers, including Plaintiff's trafficker, despite the fact that each defendant knew or should have known that this trafficker was engaged in violations of 18 U.S.C §1591(a)(1) and 18 U.S.C §1591(a)(2) at Defendants' properties, including the subject locations alleged in this Complaint. As more specifically alleged above, Parent Hotel Defendants and Hotel Defendants took part in a common undertaking and enterprise involving risk and potential profits, and here, actual profits resulted.  Parent Hotel Defendants' and Hotel Defendants' employees had a direct association with the trafficker and knowingly facilitated the trafficker, which, as shown more thoroughly in the incorporated allegations above, showed a continuous business relationship between the trafficker and Defendants such that the pattern of conduct appears to be a tacit agreement between them. Thus, Defendants are liable as a beneficiary under 18 U.S.C §1595(a).

151.    Through the acts and omissions described throughout this Complaint, Defendants received a financial benefit from participating in a venture with each other in the operations of its respective hotel

FIRST AMENDED COMPLAINT
2:24-cv-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

properties even though Defendants knew or should have known that this venture was violating 18 U.S.C §§ 1591(a) and 1595(a).

152.    Violations of 18 U.S.C §1595(a) by Defendants as "beneficiaries" operated, jointly, with other unlawful acts and omissions alleged in this Complaint, to cause Plaintiff to suffer substantial physical and psychological injuries and other damages because of being trafficked and sexually exploited at the Defendants' hotel properties.

**3.    Cause of Action: Vicarious Liability for TVPRA Violations (Parent Hotel Defendants).**

153.    Plaintiff realleges and incorporates the allegations in Paragraphs 1 through 143, and 144 through 147, and 148 through 152.

154.    Under the TVPRA and the federal common law, each member of a joint venture is vicariously liable for the acts and omissions of all other members of that joint venture.

155.    Under the TVPRA and the federal common law, an entity is vicariously liable for the acts and omissions of its alter-egos.

156.    Hotel Defendants acted as the actual agents of Parent Hotel Defendants when operating its respective hotel properties and in committing the wrongful acts and inactions alleged herein.

157.    Through the wrongful acts and omissions described throughout this Complaint, Parent Hotel Defendants exercised or retained the right to exercise systematic and day-to-day control over the means and methods used by its franchisee to operate its respective hotel property.

158.    Parent Hotel Defendants are vicariously liable for the TVPRA violations of its franchisees, the Hotel Defendants, and the subagents of such.

159.    Additionally, on information and belief, each of the Parent Hotel Defendants participated in a joint venture operating the subject Hotel Defendant locations. They had highly integrated operations at the hotels, shared revenue and profits generated from the hotels, and exercised mutual control over the

FIRST AMENDED COMPLAINT
2:24-cv-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

venture at the hotels. They functioned as a single integrated entity and/or as alter-egos of one another and are therefore each directly and proximately liable for the harms and damages caused to Plaintiff as a result.

## JOINT AND SEVERAL LIABILITY

160.    "Joint and several liability 'applies when there has been a judgment against multiple defendants."[57] If two or more defendants jointly cause harm, each defendant is held liable for the entire amount of the harm; provided, however, that the plaintiff recovers only once for the full amount.[58]

161.    Federal law allows an injured party to sue a tortfeasor for the full amount of damages for an indivisible injury that the tortfeasor's negligence was a substantial factor in causing, without regard to his proportion of fault and even if the concurrent negligence of others contributed to the incident.[59]

162.    Plaintiff alleges Defendants', and each of them, should be held joint and severally liable to Plaintiff for the totality of her injuries and damages alleged herein.

## DAMAGES

163.    Defendants' wrongful acts and omissions described above, individually and collectively, caused Plaintiff to sustain legal damages.

164.    Plaintiff did suffer the following injuries as a direct and proximate result of Defendants', and each of their, wrongful actions and inactions alleged herein, and as such Plaintiff is entitled to be compensated for past and future personal injuries, non-economic damages, and economic damages, see, e.g., 18 U.S.C. §§ 1593, 1595, including:

      a.    actual damages;

---

[57] *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 220–21 (1994).

[58] See 735 ILCS 5/2-1117; see Restatement (Second) of Torts § 875 (1977); *Honeycutt v. United States*, 137 S. Ct. 1626 (2017).

[59] *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256 (1979) (citations omitted); *Manganiello v. City of New York*, No. 07 Civ. 3644, 2008 WL 2358922 (S.D.N.Y. June 10, 2008), affirmed, 612 F.3d 149 (2nd Cir. 2010).

FIRST AMENDED COMPLAINT
2:24-CV-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

b.   direct damages;

c.   incidental and consequential damages;

d.   lost earnings and lost earning capacity;

e.   necessary medical expenses;

f.   life care expenses;

g.   physical pain and suffering;

h.   physical impairment;

i.   mental anguish and emotional distress damages (until trial and in the future);

j.   restitution;

k.   unjust enrichment; and

l.   disgorgement of profits.

165.    Plaintiff is entitled to pre- and post-judgment interest at the maximum legal rates.

**Punitive Damages**

166.    Plaintiff is entitled to punitive damages under the applicable statutes against Defendants, and each of them, for each and every cause of action alleged herein, as a result of Defendants' outrageous, wanton, willful, and malicious conduct underlying Plaintiff's claims. See *Ditullio v. Boehm*, 662 F.3d 1091 (9th Cir. 2011).

**Attorney Fees**

167.    Plaintiff is entitled to recover her costs and reasonable, necessary, or customary attorneys' fees from Defendants under the applicable statutes. See 18 U.S.C. § 1595(a).

168.    All conditions precedent to Plaintiff's recovery of its costs and attorneys' fees have occurred or will occur prior to entry of judgment in this suit.

FIRST AMENDED COMPLAINT
2:24-cv-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

## Jury Demand

169.    Plaintiff requests a jury trial in this action.

## Prayer

170.    For these reasons, Plaintiff prays that this case be set for trial before a jury, and that upon a final hearing of the cause, judgment be entered for Plaintiff against Defendants jointly and severally, for:

      a.  all economic damages to which she is entitled;

      b.  all actual damages to which she is entitled;

      c.  all incidental and consequential damages to which she is entitled;

      d.  all mental anguish and emotional distress damages to which she is entitled;

      e.  all restitution damages to which she is entitled;

      f.  all disgorgement of profits to which she is entitled;

      g.  all unjust enrichment damages to which she is entitled;

      h.  exemplary, treble, and/or punitive damages;

      i.  attorneys' fees and costs of suit;

      j.  pre-judgment and post-judgment interest at the highest rate allowed by law; and

      k.  all other relief to which she is entitled in law or in equity.

SINGLETON SCHREIBER, LLP

Dated: November 11, 2024         By:     _/s/  Katie Llamas_____
Meagan Verschueren (CA 313117) *PHV applicant*
Katie Llamas (CA 303983) *PHV applicant*
SINGLETON SCHREIBER, LLP
591 Camino de la Reina, Ste. 1025
San Diego, CA 92108
Tel. (619) 771-3473
Email: mverschueren@singletonschreiber.com
Email: kllamas@singletonschreiber.com

Gerald Singleton (WSBA No.59010)
Stephen J. Hill (WSBA No. 7651)

FIRST AMENDED COMPLAINT
2:24-cv-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

SINGLETON SCHREIBER, LLP
450 Alaskan Way South
Seattle, WA 98104
Tel. (206) 466-0809
Email: gsingleton@singletonschreiber.com
Email: shill@singletonschreiber.com


Attorneys for Plaintiffs

FIRST AMENDED COMPLAINT
2:24-CV-01270

**CERTIFICATE OF SERVICE**

I hereby declare under penalty of perjury under the laws of the United States of America that on this date, the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF system and thus served simultaneously upon all counsel of record.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 11, 2024

        _/s/ Katie Llamas_____
        Katie Llamas

FIRST AMENDED COMPLAINT
2:24-CV-01270

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473