UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JANE DOE A,<br><br>                Plaintiff,<br><br>    v.<br><br>SEATAC HOTELS LLC, et al.,<br><br>                Defendants. | CASE NO. C24-1270 MJP<br><br>ORDER DENYING MOTION TO DISMISS |

This matter comes before the Court on Defendant Choice Hotels International, Inc.'s Motion to Dismiss. (Dkt. No. 83.) Having reviewed the Motion, the Response (Dkt. No. 86), the Reply (Dkt. No. 87), and all supporting materials, the Court DENIES the Motion.

**BACKGROUND**

Plaintiff "Jane Doe A" brings claims under the Trafficking Victims Protection Reauthorization Act (TVPRA) against the hotel franchisors and franchisees of two hotels where

she was trafficked for commercial sex between 2012 and 2016.[1] Starting in 2012, Doe was forced into commercial sex trafficking at two Seatac hotels: Motel 6 and Quality Inn. (Amended Complaint ¶ 30.) For approximately four years, Doe's traffickers would rotate her between these hotels, where she was forced to engage in commercial sex for "days at a time, encountering the same staff" and taking well over five "dates" per day. (AC ¶ 31, 40.) Doe has filed suit against the franchisors and franchisees of both hotels, alleging that they participated and benefitted from her forced sex trafficking in violation of the TVPRA. Choice Hotels International, Inc., the franchisor of the Quality Inn moves to dismiss. Choice challenges the adequacy of the allegations concerning its knowing participation in the trafficking of Doe. The Court reviews relevant factual allegations of Doe's trafficking at the Quality Inn and the allegations related to Choice's alleged knowledge and involvement.

Doe's complaint catalogues many red flags that made her trafficking apparent to the hotel owners and employees where she was trafficked. During Doe's frequent stays over a four-year period, front desk and other staff at these hotels "would consistently see Plaintiff with her trafficker and would have realized they kept returning and exhibiting red flags of trafficking." (AC ¶ 32.) Doe alleges she had visible marks caused by her trafficker, which included frequent broken lips, broken and missing teeth, black eyes, and cigarette burns on her skin. (AC ¶¶ 34-36.) At check-in, her trafficker did "most, if not all, of the talking during check-in," while Doe was visibly scared, did not make eye contact, and appeared withdrawn and timid. (AC ¶ 38.) Doe's traffickers would not allow cleaning staff into Doe's room, but would "ask for

---

[1] The Court refers to Jane Doe by her pseudonym, although she has not formally moved for permission to proceed anonymously. Doe will need to move separately to continue to proceed under a pseudonym. The motion for leave to do so must be filed within 20 days of entry of this Order.

1  extraordinary amount of linens and towels throughout their stays." (AC ¶ 39.) Doe also identifies

2  the following additional red flags:

3  paying for stays in cash; paying for extended stays on a day-to-day basis; requesting certain rooms away from other guests; obvious signs of illegal drug use; frequent requests for clean linens or towels; unusually large numbers of used condoms in the trash; unusually large numbers of male visitors going in and out of Plaintiff's room at all times during the day and night; visible signs of physical abuse; women wearing clothing inappropriate for the weather; and loud noises of abuse and other violence audible to staff and/or other rooms.

7  (AC ¶ 41.) Doe alleges that the red flags surrounding her stays were known to the hotel staff and

8  owner, and her trafficker paid the owner or manager extra money to allow visitors past 11:00

9  PM. (AC ¶¶ 134, 136.)

10  As to Choice's awareness of her trafficking, Doe relies principally on the control Choice

11  allegedly exerted over its franchisees, like the Seatac Quality Inn. (AC ¶¶ 70-75.) Doe alleges

12  that Choice "exercises day-to-day control over the Quality Inn and its other brand hotels through

13  centralized corporate systems, training, policies and brand standards." (AC ¶ 71.) Doe alleges

14  Choice has access to reservation, payment, and occupancy data for each franchisee, which

15  includes customer names, payment information, and reservation histories, and it retains the

16  ability to audit and inspect the franchises to ensure compliance with the franchise agreements.

17  (AC ¶¶ 72, 75.) She further alleges that Choice manages and enforces "corporate and branded

18  property training, policies, and procedures on human trafficking, cybersecurity, guest

19  preferences, internet access, cleanliness and other hotel brand related policies." (AC ¶ 73.) She

20  also alleges on information and belief that all reservation information passed through Choice's

21  central reservation system. (AC ¶ 82.)

22  Doe includes several allegations about Choice's alleged knowledge of criminal activity at

23  the Seatac Quality Inn. (AC ¶¶ 130-38.) Doe alleges that Choice has been generally aware of sex

24  trafficking at its franchisees locations, and that it has been named in "numerous civil lawsuits

ORDER DENYING MOTION TO DISMISS - 3

1  arising out of sex trafficking at their properties," though she does not link these allegations
2  specifically to the Seatac Quality Inn. (AC ¶¶ 130, 132.) Doe also alleges that various internet
3  reviews of the Seatac Quality Inn put Choice on notice that sex trafficking was occurring. (AC ¶
4  133.) These include statements that the hotel was "seedy," that a guest found "condoms behind
5  the TV," and that one guest was "approached a number of times by hoodlum individuals" and
6  that they heard and saw couples arguing and fighting. (Id.) Doe also includes general allegations
7  about how hotel franchisors control the brand standards at franchisees, control a central
8  reservation system, and may conduct investigations to ensure compliance with franchise
9  agreements. (AC ¶¶ 59-65.) And she alleges, on information and belief, that franchised hotels
10 pay a percentage of their total revenue back to the franchisor. (AC ¶ 79.) Doe's Amended
11 Complaint includes other allegations about the hospitality industry's role in sex trafficking, its
12 awareness of the problem, and the ways in which the industry continues to benefit financially
13 from sex trafficking. (AC ¶¶ 43-58.)

## ANALYSIS

**A.     Legal Standard**

Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In ruling on a motion to dismiss, the Court must construe the complaint in the light most favorable to the non-moving party and accept all well-pleaded allegations of material fact as true. Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005); Wyler Summit P'ship v. Turner Broad. Sys., 135 F.3d 658, 661 (9th Cir. 1998). Dismissal is appropriate only where a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that

1  allows the court to draw the reasonable inference that the defendant is liable for the misconduct
2  alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

3  **B.    Plaintiff's TVPRA Claims**

4  Doe pursues two distinct claims under the TVPRA against Choice. First, she alleges that
5  Choice violated the TVPRA as a perpetrator, in violation of 18 U.S.C. § 1591(a)(1). Second, Doe
6  alleges Choice violated the TVPRA as a knowing beneficiary in a sex trafficking venture
7  involving Plaintiff, in violation of 18 U.S.C. § 1591(a)(2). Although these are criminal statutes,
8  the TVPRA permits a plaintiff, such as Doe, to bring claims against the "perpetrator (or whoever
9  knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of
10 value from participation in a venture which that person knew or should have known has engaged
11 in an act in violation of [18 U.S.C. § 1951])." 18 U.S.C. § 1595(a). The Court reviews both
12 claims after briefly reviewing the adequacy of the allegations that Doe was a "victim" under the
13 TVPRA.

14  **1.    Plaintiff is a "Victim"**

15  To bring claims under § 1595, the plaintiff must be a "victim" of a violation of the
16 TVPRA's criminal provisions. See G.G. v. Salesforce.com, Inc., 76 F.4th 544, 551–53 (7th Cir.
17 2023) (treating the "victimhood" as a requirement); M.A. v. Wyndham Hotels & Resorts, Inc.,
18 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019). Plaintiff must therefore show that a defendant
19 "could be criminally liable." G.G., 76 F.4th at 552. This requires some showing that she was
20 forced, threatened, or coerced into engaging in commercial sex acts. See 18 U.S.C. § 1591(a).
21  Choice's challenge to the adequacy of the allegations that Doe was forced into
22 prostitution lack merit. Doe alleges that she "was harbored and forced to engage in commercial
23 sex acts" from 2012 through 2016. (AC ¶ 7; see AC ¶¶ 30-42, 105, 108.) She provides ample
24

factual allegations that she was forced to engage in commercial sex acts—"well over five" times a day—and faced severe physical punishment and abuse from her trafficker. (AC ¶¶ 30-42.) These allegations are not "conclusory," as Choice labels them, and Choice's argument is not well taken. Doe has adequately alleged her status as a victim.

### 2. TVPRA Beneficiary Liability

The Court finds that Doe has adequately alleged a beneficiary claim against Choice.

To succeed on a beneficiary liability theory under § 1595(a)(2), the plaintiff must show that the defendant "(1) knowingly benefitted, (2) from participation in a venture . . . , (3) which they knew or should have known was engaged in conduct that violated the TVPRA." Ratha v. Phatthana Seafood Co., 35 F.4th 1159, 1175 (9th Cir. 2022) (citing 18 U.S.C. § 1595(a)). Facts must be alleged to satisfy each element. See id. Beneficiary liability reflects an expansion of the TVPRA made through Congress's 2008 amendments to the Act, which "ma[de] it easier for victims of trafficking violations to bring civil suits including by broadening the parties who could be sued for trafficking violations from only the perpetrator under the original statutory scheme to anyone who knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." M.A., 425 F. Supp. 3d at 964 (citation and quotation omitted).

The Court finds that Doe has sufficiently alleged that Choice knowingly benefitted from its participation in a venture that trafficked Plaintiff for commercial sex.

First, Plaintiff has alleged that as the franchisor, Choice knowingly benefitted from Doe being trafficked—the first and third elements of the claim. As alleged, Choice obtained a portion of the revenue generated from the hotel bookings used to traffic Plaintiff. (AC ¶ 79.) While this is alleged on information and belief, doing so is permissible here where the exact information is

1  in the possession and control of the defendant. See Park v. Thompson, 851 F.3d 910, 928 (9th
2  Cir. 2017). And, as Doe points out, the rental of a room can constitute a "benefit" sufficient to
3  satisfy this element of the claim. Jane Doe (S.A.S.) v. ESA P Portfolio LLC, C23-6038 TMC,
4  Dkt. No. 102 at 17 (citing M.A., 425 F. Supp. 3d at 965). As to the "knowing" element, Plaintiff
5  has also provided adequate allegations that Choice knew it was benefitting from Plaintiff's
6  commercial sex acts because: (1) it had day-to-day control over the hotel's operations, including
7  the centralized reservation system that should have showed the cash payments over the many
8  years she was trafficked there; and (2) Choice had policies and procedures in place requiring
9  hotel employees to report sex trafficking red flags; and (3) the many red flags apparent to hotel
10 employees that Plaintiff was being trafficked for commercial sex, and which was or should have
11 been reported to Choice. (AC ¶¶ 96, 130-38, 141, 157.) The Court find these allegations
12 sufficient to satisfy the first and third elements of the claim.

13     Second, the Court also finds the allegations as to the second element—Choice's
14 participation in the venture—to be adequate.

15     There are two ways to establish participation in a venture: (1) by pleading facts "from
16 which a court could 'infer a common purpose, shared profits and risk, or control," S.A.S., Dkt.
17 No. 102 at 11 (quoting Doe 1 v. Apple Inc., 96 F.4th 403, 416 (D.C. Cir. 2024); or (2) by
18 "showing[] a 'direct and continuous relationship that existed between the parties,'" id. (quoting
19 Doe 1, 96 F.4th at 416). Where a defendant "provides assistance, support, or facilitation to the
20 trafficker through such a 'continuous business relationship,' a court or jury may infer that the
21 participant and trafficker have a 'tacit agreement' that is sufficient for 'participation' under
22 Section 1595." G.G., 76 F.4th at 559 (quoting M.A., 425 F. Supp. 3d at 970–71). "[A] participant
23 defendant need not have committed 'some "overt act" that furthers the sex trafficking aspect of
24

ORDER DENYING MOTION TO DISMISS - 7

the venture' or have 'associated' with the sex trafficker 'for the purpose of furthering the sex trafficking.'" Id. at 559 n.15 (quoting M.A., 425 F. Supp. 3d at 968–69); see J.C. v. Choice Hotels Int'l, Inc. ("J.C. II"), No. 20-cv-00155-WHO, 2020 WL 6318707, at *7 (N.D. Cal. Oct. 28, 2020) (collecting district court decisions in the Ninth Circuit reaching the same conclusion).

The Amended Complaint contains sufficient allegations that Choice participated in the venture created to traffic Doe. The allegations are similar to those found sufficient in S.A.S., given that Doe has plausibly connected the dots between Choice and the sex trafficking venture that used rooms at its franchised hotel for over four years. S.A.S., Dkt. No. 102 at 12-13. Not only did Choice maintain a centralized booking system that should have put it on notice, but it also had anti-trafficking policies that required its franchisee's employees to report signs of trafficking. And as Doe alleges, there were obvious signs of her trafficking over a four year period in which she was forced to engage in commercial sex acts at the Quality Inn that should have been reported to Choice. What is more, the hotel's manager/owner himself participated in the venture by accepting money from Doe's trafficker to allow visitors after 11 PM. Similar allegations have been found to be particularly relevant to a franchisor's participation. See I.R. v. I Shri Khodiyar, LLC, No. 1:22-CV-00844-SEG, 2024 WL 1928755, at *7 (N.D. Ga. Mar. 18, 2024) (treating a "managerial employee's" "solicit[ation]" of the plaintiff "for sex at the hotel and providing free lodging in exchange" as evidence of the hotel's participation in a sex trafficking venture). While the franchisor defendant in S.A.S. was also alleged to be an owner and operator of the hotel in question, the fact that Choice did not own the Quality Inn does not obviate the allegations that it exercised control over centralized reservation systems and required reporting of the obvious signs that Doe was being trafficked at the hotel. And by providing Doe's

traffickers rooms of their choice for a four year period, Choice supported and facilitated the trafficking. This element is adequately pleaded.

### 3. TVPRA Perpetrator Liability

Doe alleges that Choice violated § 1591(a)(1) by "harbor[ing] individuals, including Plaintiff" with knowledge that fraud or force would be used to force or coerce Doe to engage in commercial sex acts. The Court finds the allegations sufficient.

To be civilly liable as a perpetrator under the TVPRA, the defendant must be shown to have violated the elements for criminal liability set out in § 1595(a)(1). See 18 U.S.C. § 1595. As is relevant to Doe's allegations Section 1951(a)(1) imposes criminal liability on "whoever knowingly . . . harbors . . . by any means a person . . . knowing . . . that means of force, threats of force, fraud, coercion . . . or any combination of such means will be used to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a)(1). "As a result, [civil] plaintiffs must allege defendants knowingly harbored or maintained a person with knowledge that fraud or force would be used to cause her to engage in a commercial sex act." J.M. v. Choice Hotels Int'l, Inc., No. 2:22-CV-00672-KJM-JDP, 2023 WL 3456619, at *2 (E.D. Cal. May 15, 2023) (citation and quotation omitted). "What the statute requires is that the defendant kn[ew] in the sense of being aware of an established modus operandi that will in the future cause a person to engage in prostitution." Id. (citation and quotation omitted).

While not particularly robust, Plaintiff's allegations adequately plead a claim that Choice knowingly "harbored" her in violation of the TVPRA. Plaintiff has alleged in detail the many reasons why the hotel franchisee's staff and manager knew or should have known that she was present at the Quality Inn as a victim of commercial sex trafficking. As to Choice, the allegations of knowledge are somewhat less detailed, but they adequately explain that Choice "exercises

day-to-day control over the Quality Inn and its other brand hotels through centralized corporate systems, training, policies and brand standards," (AC ¶ 71), that it had a centralized reservation system showing that Doe's traffickers were repeatedly renting rooms, (AC ¶¶ 72, 75, 82), and, perhaps most importantly, that Choice maintains and enforces "corporate and branded property training, policies, and procedures on human trafficking" that required reporting of the many red flags hotel staff saw to Choice, (AC ¶ 73; see also AC ¶¶ 130-38, 141, 157). Based on these allegations, the Court finds that Doe has adequately alleged that Choice knowingly harbored Doe while knowing that she was being coerced into commercial sex trafficking.

The Court therefore DENIES the Motion as to both TVPRA claims.

**C.    Vicarious Liability**

Doe alleges that Choice is also vicariously liable for the acts of Choice's franchisees. The Court limits its analysis to the agency theory, which is the only theory both parties address, and which has the most relevance to the claims. And the Court finds the allegations sufficient.

Although the TVPRA is silent on vicarious liability, district courts have considered it as a viable means of suing a franchisor for its franchisee's misconduct. See, e.g., J.C., 2020 WL 6318707, at *8; B.M. v. Wyndham Hotels & Resorts, Inc., No. 20-CV-00656-BLF, 2020 WL 4368214, at *6 (N.D. Cal. July 30, 2020); M.A., 425 F. Supp. 3d at 972. Although neither party identifies what state law applies to the franchise agreements between Choice and the franchisees, the law both Parties cite concludes that an agency relationship will exist if the franchisor has the right to substantially control its franchisee. See HDT Bio Corp. v. Emcure Pharma, Ltd., 704 F. Supp. 3d 1175, 1191 (W.D. Wash. 2023) (cited by Choice at Mot. 23-24); B.M., 2020 WL 4368214, at *6 (cited by Plaintiff at Resp. at 14).

1    The Court finds the allegations of Choice's control sufficient to impose vicarious liability
2    on an agency basis. Specifically, Doe alleges that Choice "exercises day-to-day control over the
3    Quality Inn and its other brand hotels through centralized corporate systems, training, policies
4    and brand standards." (AC ¶ 71.) She explains that Choice "manages corporate and branded
5    property training, policies, and procedures on human trafficking" and "requires its branded
6    properties to comply with its corporate polices relating to security and safety, human rights, . . .
7    and the law." (AC ¶¶ 73-74.) As to payment, Doe also alleges that Choice retains control over
8    the reservation system, which requires use of a centralized reservation system that tracks
9    payment, reservations, and occupancy information. (AC ¶ 72.) These all indicate a level of
10   control that could be found to show "substantial control" to qualify as an agency relationship.
11   See HDT, 704 F. Supp. 3d at 1191. Choice's motion merely highlights countervailing facts that a
12   jury might consider in finding the absence of an agency relationship. (See Mot. at 24.) But
13   applying the Rule 12(b)(6) standard, the Court cannot construe facts within and outside the
14   complaint in Choice's favor. Given the adequacy of the allegations, this is an issue to resolve at
15   trial, not on a motion to dismiss.

16   The Court DENIES the Motion as to vicarious liability.

17   **D.    Time Bars**

18   Choice argues that Doe cannot pursue any claims before August 22, 2014, given the date
19   of filing and the ten year statute of limitations. The Court disagrees.

20   The running of a statute of limitations is an affirmative defense that the defendant bears
21   the burden of proving. Payan v. Aramark Mgmt. Servs. L.P., 495 F.3d 1119, 1122 (9th Cir.
22   2007). "A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the
23   applicable statute of limitations only when the running of the statute is apparent on the face of

24

1  the complaint," meaning that "it appears beyond doubt that the plaintiff can prove no set of facts
2  that would establish the timeliness of the claim." Von Saher v. Norton Simon Museum of Art at
3  Pasadena, 592 F.3d 954, 969 (9th Cir. 2010) (internal quotation marks omitted).

4  　　　The Court agrees with Doe that the Court should not dismiss her claims as untimely at
5  this stage of the litigation. Doe alleges that she was trafficked between 2012 and 2016, and she
6  filed suit in 2024, which is within 10 years of 2016. Choice cites to dicta in a district court
7  decision, where the Court held that any claims premised on events happening more than 10 years
8  before the complaint was filed were barred. Lundstrom v. Holiday Hosp. Franchising, LLC, No.
9  1:22-CV-056, 2023 WL 4424725, at *10 (D.N.D. May 22, 2023). It also cites to another district
10 court decision reaching a similar conclusion, though on different facts. See H.G. v. Inter-Cont'l
11 Hotels Corp., 489 F. Supp. 3d 697, 710 (E.D. Mich. 2020). Neither of these cases addresses the
12 continuing tort doctrine, "where there is no single incident that can fairly or realistically be
13 identified as the cause of significant harm." Flowers v. Carville, 310 F.3d 1118, 1126 (9th Cir.
14 2002) (citation and internal quotation marks omitted). This theory has been applied to at least
15 one other TVPRA case, and the Court finds that it sensibly applies to TVPRA claim, particularly
16 where, as Doe has alleged, the victim was allegedly trafficked by the same individuals
17 continuously for many years. See J.M., 2022 WL 10626493, at *6. Because this issue cannot be
18 resolved on a motion to dismiss, the Court DENIES the Motion as to the statute of limitations.

19 　　　The Court also rejects Choice's request to foreclose any liability for any periods before
20 2014 when it claims to have started its relationship with the Seatac Quality Inn. Choice notes that
21 Doe alleges the hotel changed from a Days Inn to a Quality Inn in 2014, and then argues without
22 any support that it does not have any relationship to Days Inn. (See AC ¶ 9.) While this may
23 prove to be true, the Court lacks sufficient allegations in the amended complaint on which to
24

make this determination. The Court therefore DENIES the request, which can still be raised by Choice once sufficient facts are properly presented to the Court on this issue.

E. **Shotgun Pleading**

Choice argues that Plaintiff has engaged in shotgun pleading. This argument holds no water. Defective shotgun pleadings arise when multiple groups of defendants are lumped together and each defendant cannot identify the conduct of which it is accused. See Destfino v. Reiswig, 630 F.3d 952, 958 (9th Cir. 2011). Plaintiff's amended complaint is not such a pleading. While Doe has lumped together the franchising entities in certain general allegations, she has also taken pains to describe facts specific not only to each franchisee owner/operator, but also to the franchising entities, such as Choice. There Court rejects the argument.

F. **Joint and Several Liability**

Choice contends that it cannot be held jointly and severally liable with the other defendants given the variation between the in hotels and conduct. While the Court generally understands the concern, it presents an issue for another day. The Court here is not being asked to hold any party liable, jointly or otherwise. The Court will ensure that any liability is properly applied to the various parties when and if that should arise. As such, the Court declines to rule on this request at present.

## CONCLUSION

Doe has adequately alleged two claims against Choice under the TVPRA. Additionally, she has included sufficient allegations to support her agency-based theory of vicarious liability. The Court declines Choice's request for dismissal of the claims as time-barred, and it finds no merit in Choice's complaint that the amended complaint is an impermissible shotgun pleading.

Lastly, the Court will resolve any issues surrounding joint and several liability when and if they arise. On these grounds the Court DENIES the Motion.

As noted above, Plaintiff must file a motion for leave to proceed under a pseudonym within 20 days of entry of this Order.

The clerk is ordered to provide copies of this order to all counsel.

Dated February 12, 2025.

Marsha J. Pechman
United States Senior District Judge