1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| 10 | JANE DOE A, | CASE NO. C24-1270 MJP |
| 11 | Plaintiff, | ORDER ON PLAINTIFF'S MOTION FOR PROTECTIVE ORDER |
| 12 | v. | |
| 13 | SEATAC HOTELS LLC, et al., | |
| 14 | Defendants. | |

This matter comes before the Court on Plaintiff's Motion for Protective Order. (Dkt. No. 112.) Having reviewed the Motion, Defendants' Response (Dkt. No. 113), the Reply (Dkt. No. 115), and all supporting materials, the Court GRANTS in part the Motion, and ENTERS a Protective Order, separately from this Order. The Court finds this matter suitable for decision without oral argument.

ORDER ON PLAINTIFF'S MOTION FOR PROTECTIVE ORDER - 1

|   |   |
|---|---|
| 1 | **BACKGROUND** |
| 2 | Starting in 2012, Jane Doe A was forced into commercial sex trafficking at two SeaTac |
| 3 | hotels: Motel 6 and Quality Inn. (Amended Complaint ¶ 30 (Dkt. No. 74.) For approximately |
| 4 | four years, Doe A's traffickers would rotate her between these hotels, where she was forced to |
| 5 | work for "days at a time, encountering the same staff" and taking well over five "dates" per day. |
| 6 | (AC ¶ 31, 40.) Doe A has filed suit against the owners/franchisees of both hotels, and the |
| 7 | franchisors, alleging that they participated and benefitted from the forced sex trafficking of Doe |
| 8 | A in violation of the Trafficking Victims Protection Reauthorization Act (TVPRA). |
| 9 | Doe A now seeks entry of a protective order concerning the exchange of confidential |
| 10 | information, including her identity. Although the Parties were able to reach agreement on many |
| 11 | aspects of a stipulated protective order, they dispute several provisions, which the Court reviews. |
| 12 | First, the Parties dispute how and whether Defendants must obtain Court approval before sharing |
| 13 | Doe A's identity with her traffickers. Second, they dispute whether Doe A may disclose certain |
| 14 | discovery to "coordinating" counsel in other TVPRA cases pending against the same |
| 15 | Defendants. Third, the Parties dispute whether the protective order should include a provision for |
| 16 | "highly confidential" information. Fourth, the Parties dispute whether confidential discovery |
| 17 | materials can be retained after the litigation terminates. Fifth, the Parties dispute the scope of |
| 18 | who must sign an acknowledgement to be bound by the Protective Order before accessing or |
| 19 | being shown confidential information. |
| 20 | **ANALYSIS** |
| 21 | **A.      Protective Order Standard** |
| 22 | Under Rule 26(c)(1), "[t]he court may, for good cause, issue an order to protect a party or |
| 23 | person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. |
| 24 | |

P. 26(c)(1). "A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1130 (9th Cir. 2003). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.3d 470, 476 (9th Cir. 1992) (quotation and citation omitted).

**B.    Court Approval to Contact Trafficker is Reasonable**

The Court agrees in principle with Doe A that Defendants must obtain prior-Court approval before sharing her identity with her traffickers. But, as reflected in the Protective Order, the Court adopts a different protocol than what Doe A proposes.

First, Doe A has identified a reasonable fear for her safety if her identity is given to her traffickers. As alleged, Doe A is the victim of sex trafficking, who endured four years of coerced commercial sexual acts at the hands of her traffickers in the SeaTac area. (See Am. Compl. ¶¶ 30-31, 34-42.) Doe A's traffickers used threats of force against her and her family, and Doe A now argues that she continues to fear for her safety from her traffickers. Although Doe A has not filed a declaration, her counsel avers that "Plaintiff lives in a constant state of fear that her traffickers or their associated will harm her and her family." (Declaration of Meagan Verschueren ¶ 8 (Dkt. No. 112-1).) Based on the review of the briefing, it does not appear that Defendants dispute Doe A's general fear of harm from her traffickers. As Doe A's counsel avers, the Parties "agree Defendants must provide notice to Plaintiff before contacting her traffickers and/or their associates[.]" (Id. ¶ 9.) Indeed, Defendants agree that Plaintiff should be permitted to use a pseudonym in pre-trial filings. (See Defs. Resp. at 1.) Based on the record before the Court,

ORDER ON PLAINTIFF'S MOTION FOR PROTECTIVE ORDER - 3

it finds that Doe A has a fear of harm from her traffickers if her identity is released to them. This fear justifies some form of protective order.

The Court finds that a blend of the proposals submitted by the Parties adequately protects Doe A from harm. The Court reviews the competing proposals and then explains its reasoning.

Doe A proposes that Defendant must provide the Court with an ex-parte notice and obtain the Court's approval before contacting revealing her identity to her traffickers. (See Plaintiff's Proposed Protective Order § IV(E) (Dkt. No. 112-1 at 68).) Under Doe A's rubric, Defendants must provide Doe A and the Court with an ex-parte application and notice that describes the information sought, why the information is sought from the traffickers and not someone else, any alternative means to get that information, and the necessity of disclosing the name and identity to the traffickers. (Id.) The Court is then to weigh the request to see if it is relevant and "proportional to the needs of the case and the risks involved." (Id.) If the Court approves the request, Defendants then have to give Plaintiff 14-days' notice of where the contact will occur and all the information that will be disclosed regarding Plaintiff. (Id. § IV(E)(1).) Doe A suggests that this methodology adopted in a similar case in this District: Doe v. Salesforce.com Inc., C24-435 TL (W.D. Wash.). This is largely accurate, though the Protective Order in Salesforce does not require evidence as to alternative means or any statement that the Court would weigh the "risks involved" in determining whether to allow the disclosure. See id., Dkt. No. 94.

Defendants' counter-proposal puts the burden on Doe A to move for a new protective order after Defendants identify their desire to contact the traffickers and share Doe A's identity with them. (Defendants' Proposed Protective Order § 3(G) (Dkt. No. 114 at 16).) Under Defendants' proposal, they would merely give notice of the contact at least 20 days before it occurs, and Doe A would then need to move for a protective order after meeting and conferring.

1 (Id.) The proposal does not contain any provision on how the Court would assess such a motion for protective order.

The Court finds that, with small alterations, Doe A's proposed methodology is more appropriate given the existing evidence of harm that could arise with the disclosure of her identity to her traffickers and the relative burdens. Requiring Defendants to obtain approval before disclosing Plaintiff's identity to her traffickers reasonably allows the Court to determine whether the risk of harm to Doe A from the specific disclosure is proportional to the needs of the case. That said, the Court believes it is appropriate to require Doe A to file a response to Defendants' request for approval before the Court rules. This also allows Doe A to outline any specific concerns with the proposed disclosure and build an evidentiary record as to why the disclosure might be improper. It also gives the Court an opportunity to interrogate the issue with input from both Parties. As detailed in the Protective Order, Defendants must file a sealed request with the Court to disclose Doe A's identity to her traffickers and Doe A, who shall get notice, must then file a sealed response to identify specific concerns and provide supporting evidence. No reply shall be filed. This process will enable the Court to resolve any disputes more efficiently than if Doe A were required to file a separate motion for protective order.

The Court finds no merit in Defendants' arguments that a prior-approval process violates their due process rights or work product protections. (Resp. at 3.) Defendants' due process rights are not infringed where they may still access the materials they seek, provided they comply with a simple procedural step and obtain approval to share Doe A's identity to her traffickers. This process is narrowly tailored to prevent harms from the disclosure of Doe A's identity already evident in the record, while still allowing Defendants to advocate for the use of her identity when contacting her traffickers. The process does not necessarily foreclose discovery, and is simply a

1  reasonable form of protective order as countenanced by the Federal Rules. Defendants also argue
2  that Doe A's proposal requiring them to disclose the information they seek from her traffickers
3  would require disclosure of work product. The Court disagrees. The amount of detail required to
4  obtain Court approval is the very same that would be required by Defendants to disclose if Doe
5  A was required to move anew for a protective order—as Defendants propose. Defendants must
6  disclose the nature of the information sought and why it is reasonably necessary to disclose
7  Plaintiff's identity to these witnesses. Even if this requires disclosing some modicum of work
8  product, it is both minimal and reasonable under the circumstances and in light of the risk of
9  harm already evident in the record.

10  With these considerations in mind, the Court has provided a detailed methodology with
11  regard to the request to disclose Doe A's identity to her traffickers, which is set forth in the
12  separately-docketed Protective Order.

### C.    Disclosure to Coordinating Counsel Not Reasonable

14  Doe A asks the Court to permit her to share confidential information with counsel of
15  cases pending against Defendants involving similar sex trafficking claims. The Court finds this
16  request procedurally improper and something that can be handled on an as-needed basis should a
17  party from a related case ask permission from the Court to access specific materials produced in
18  this case.

19  Doe A's Proposed Protective Order includes provision that would allow her counsel to
20  share confidential material with "coordinating counsel" "to whom disclosure is reasonably
21  necessary for this litigation and who have signed" the acknowledgement of the Protective Order.
22  (Pl. P.O § III(5).) The term "coordinating counsel" refers to other attorneys litigating similar sex
23  trafficking claims against the same defendants with whom "counsel reasonably believes [it] is
24

necessary to consult with to meet the applicable standards under the ABA Model Rules of Professional Conduct . . . in representing the Parties to the best of their abilities." (Pl. P.O. §§ I(10).) Doe A would only have to deem the material "necessary" to allow the sharing.

The Court remains unconvinced by Doe A's claim that her counsel should have the ability to give other counsel with access to protected material in this case without specific court approval. The case Doe A cites for support, Foltz, remains inapposite and inadequate support for her proposal. 331 F.3d at 1130. Foltz involved a situation where the district court refused to modify an existing protective order to allow an intervenor to access materials subject to the Court's protective order for use in collateral litigation. Id., 331 F.3d at 1130. The Ninth Circuit explained that while access to materials for collateral litigation is generally favored, "a court should not grant a collateral litigant's request for such modification automatically." Id. at 1132. Here, Doe A's proposal would remove the Court's ability to review a collateral litigant's request for access to information produced in this litigation, and would empower Doe A's counsel to act without court supervision in sharing discovery materials. The Court finds no legal support for this procedure in Foltz, and it would afford far too much discretion to counsel to make judgment calls about what should or should not be shared. The Court therefore rejects Die A's proposal. The Court notes that this ruling does not preclude counsel in related matters from applying for access to specific materials, should the need arise.

**D.    Highly Confidential Category Not Necessary**

Defendants request the Court include a "highly confidential" category of information covering trade secrets that are subject to slightly tighter restrictions that would not allow showing such information to any deponents. While Doe A appears amenable to a "highly confidential"

provision, she objects to the way in which Defendants have defined it and without the restriction to showing such materials to deponents.

The Court rejects the use of a "highly confidential" category designation, as it does not appear necessary. Defendants' proposed definition of "highly confidential" refers to "trade secret, proprietary information, confidential research, development, commercial, or competitively sensitive information that have been maintained as non-public or confidential." (Def. Prop. P.O. § II(7).) This category is duplicative of Rule 26(c)(1)(G)'s general recognition that these kinds of materials can be protected. And it is duplicative of Doe A's proposed definition of "confidential" materials. More importantly, Defendants have not adequately explained why they expect to share information that needs any greater protection from disclosure than is afforded to any other confidential information. Nor have they explained why witnesses should be precluded from seeing such materials during depositions—a proposal that would unduly restrict Doe A's ability to conduct discovery. On the record presented, the Court rejects Defendants' request to include a separate "highly confidential" category and restriction. The provisions in the appended Protective Order are adequate to confer the protection needed on the record presented. Should Defendants identify specific documents that somehow need greater protections, they are free to seek a separate protective order from the Court.

E.  **Doe A's Proposed Retention of Records After Case Terminates Is Not Reasonable**

Doe A asks the Court to allow her and her counsel to keep discovery materials after the end of the litigation. The Court finds no basis to allow this extended retention of materials beyond what is countenanced by the Court's Model Protective Order, and Doe A fails to explain why doing so is appropriate, necessary, or proportional. The Court therefore DENIES the request and uses the Model Protective Order's provision in this issue in its separate Protective Order.

### F. Other Proposed Provisions Requiring Adjustment

The Court addresses three small remaining disputes the Parties raise through the briefing.

First, the Parties dispute whether all witnesses who obtain Doe A's identity must first sign an acknowledgement to be bound by the protective order. (Pl. Prop. P.O. § IV(C)(5).) Defendants complain that this will unfairly deter witnesses from speaking with them. While the Court appreciates Defendants' concern, the risk of deterrence does not outweigh Doe A's concerns about her safety from broad disclosure. Requiring the witness to sign an acknowledgment is a reasonable means to protect Doe A from the harm at issue. The Court will therefore adopt Doe A's proposed language.

Second, Defendants incorrectly argue that Plaintiff is refusing to provide her birthday, social security number, address, and trafficker names. She is willing to provide that information, and the Court's Protective Order so requires. (See Reply at 7.)

Lastly, the Parties squabble over Doe A's inclusion of a specific provision protecting the identities of "Other Trafficking Survivors." Defendants contend that this information is already subject to the general protection for confidential information and that Doe A's proposal is redundant. While there may be some redundancy, the Court sees no harm in including Plaintiff's proposed definition, which is limited and targeted to other victims trafficked at the same hotels. This definition imposes no extra burden on the Parties or Court, and it is included in the Protective Order.

### CONCLUSION

The Court GRANTS, in part, Doe A's Motion and approves, in part, her proposed protective order. The Court largely adopts Doe A's proposed process to contact her traffickers, while rejecting Doe A's proposal to share information with coordinating counsel and to keep

discovery materials after the end of litigation. The Court also rejects Defendants' proposal to include a "highly confidential" provision, as doing so is unnecessary on the record presented and unduly restrictive on Doe A's ability to conduct discovery. Lastly, the Court will include Doe A's proposed requirement that witnesses who are given information about her identity must sign the Acknowledgment.

The Court separately enters a Protective Order consistent with this Order.

The clerk is ordered to provide copies of this order to all counsel.

Dated July 22, 2025.

Marsha J. Pechman
United States Senior District Judge