UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DOE A et al.,

              Plaintiff,

      v.

VEER HOSPITALITY PHOENIX LLC et al.,

              Defendants.

CASE NO. 2:24-cv-01270-DGE

ORDER ON THE G6 DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (DKT. NO. 120)

## I       INTRODUCTION

Before the Court is the motion for judgment on the pleadings (Dkt. No. 120) filed by Defendants G6 Hospitality, G6 Hospitality IP LLC, G6 Hospitality Property LLC, G6 Hospitality Purchasing LLC, G6 Hospitality Franchising LLC, and Motel 6 Operating L.P. (collectively, the "G6 Defendants").  For the reasons that follow, the G6 Defendants' motion is GRANTED in part and DENIED in part.

ORDER ON THE G6 DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (DKT. NO. 120) - 1

## II    BACKGROUND

### A.  Factual Background

On November 11, 2024, Plaintiff filed an amended complaint against all Defendants in this case alleging various civil violations of the Victims of Trafficking and Violence Protection Act ("TVPRA").  (Dkt. No. 74.)

In her complaint, Plaintiff alleges she was a victim of sex trafficking that occurred at various hotels in the Seattle area between 2012 and 2016.  (*Id.* at 3, 5.)  Starting in 2012, Plaintiff alleges her traffickers "rotated" between four hotels (three of which were owned and operated by the G6 Defendants) and used each hotel for "days at a time[.]"  (*Id.* at 8.)  Plaintiff specifically alleges she suffered "multiple beatings, threats, and manipulation" at the hands of her traffickers and often had a "busted lip and black eyes," burn marks from cigarettes, and knocked-out teeth.  (*Id.*)  All these injuries were apparently visible to the G6 Defendants and/or their agents.  (*Id.*)  When Plaintiff and her trafficker checked into hotels, Plaintiff was "visibly scared, would not make eye contact, [and] was withdrawn[] and timid during interactions with hotel staff."  (*Id.*)  Plaintiff alleges that there were other red flags present with each stay at the G6 Defendants' hotels, including: her traffickers paying for stays in cash, paying for extended stays, or requesting a room away from other guests; "obvious" signs of drug use; frequent requests for clean linens; "unusually large numbers of used condoms in the trash" and many male visitors going in and out of Plaintiff's room; visible signs of physical abuse; "women wearing clothing inappropriate for the weather"; and loud noises of "abuse and other violence" that were audible to staff and other guests.  (*Id.* at 9, 36.)  During the relevant timeframe, many calls to law enforcement were allegedly made, including for "suspicious circumstances, prostitution, suspicious vehicles, domestic violence, battery, sexual assault, threats, disturbances, and welfare

checks"; according to Plaintiff, these calls should have put the G6 Defendants on notice of the criminal activity occurring on their premises.  (*Id.* at 36.)

Plaintiff's complaint includes a few specific interactions with the G6 Defendants' staff. This includes a maintenance worker at the Motel 6 in SeaTac who was allegedly a "customer" of Plaintiff's, who would "go through Plaintiff's trafficker and pay him money in exchange for sex and/or sexual acts with Plaintiff." (*Id.*)  There was also a security guard at the same hotel who was "friendly" with the traffickers and would "protect them and the rooms they would rent." (*Id.* at 36–37.)  Plaintiff alleges there was a young female front desk worker at the location on 47th Avenue South in Seattle who "would have recognized Plaintiff and her trafficker returning multiple times and would have picked up on the demeanor of Plaintiff." (*Id.*)

Plaintiff alleges the G6 Defendants' knowledge of the trafficking is "not limited to a general awareness of the problem of sex trafficking in the hotel industry," but rather, their knowledge that sex trafficking was "ongoing and widespread" at their properties, including those identified in the complaint. (*Id.* at 26.)  In support of this allegation, Plaintiff lists various examples of trafficking activity at G6 properties around the country (*see id.* at 28–32) and online reviews of the Seattle-area Motel 6s she was allegedly trafficked at (*see id.* at 33–36).

Plaintiff alleges the G6 Defendants are "vicariously liable for the acts, omissions, and knowledge" of their Motel 6 locations and the staff of those hotels, who are the G6 Defendants' "actual agents or subagents." (*Id.* at 15.)  These acts and omissions were allegedly "committed in the course and scope of employment." (*Id.* at 24.)  Plaintiff lists various examples of day-to-day oversight, policies, trainings, and inspection that she alleges show the "full extent of control" exercised by the parent hotel companies over their franchisees. (*Id.* at 16–19.)  In sum, the subject Motel 6s were "part of a single unified operation" by the G6 Defendants and therefore

ORDER ON THE G6 DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (DKT. NO. 120) - 3

subject to joint control.  (*Id.* at 40–41.)  Plaintiff alleges the G6 Defendants profited from the sex trafficking of Plaintiff by renting rooms to her traffickers when they "knew or should have known that human trafficking was occurring."  (*Id.* at 22.)  She brings the following causes of action: (1) perpetrator liability under 18 U.S.C. § 1595(a) based on a violation of 18 U.S.C. § 1591(a); (2) beneficiary liability under 18 U.S.C. § 1595(a); and (3) vicarious liability for the TVPRA violations.  (*Id.* at 41–44.)

**B.  Procedural History**

On November 25, 2024, Defendant Choice Hotels International Inc. ("Choice Hotels") filed a motion to dismiss (Dkt. No. 83), which was denied by U.S. District Judge Marsha J. Pechman on February 12, 2025 (Dkt. No. 90).  In that order, Judge Pechman found Plaintiff had plausibly alleged a TVPRA violation in part because Plaintiff plausibly alleged "obvious signs" of trafficking at the hotel over the course of four years, including allegations that the hotel manager participated in the venture "by accepting money from Doe's traffickers to allow visitors after 11 PM."  (*Id.* at 8.)

Contemporaneously with the motion to dismiss filed by Choice Hotels, the G6 Defendants filed their answer to the amended complaint on December 9, 2024.  (Dkt. No. 85.) On October 17, 2025, this case was reassigned from Judge Pechman to the undersigned.  (Dkt. No. 118.)  Shortly after, on October 29, the G6 Defendants filed their motion for judgment on the pleadings.  (Dkt. No. 120.)

In their motion, the G6 Defendants argue Plaintiff's complaint fails to state a claim for two primary reasons.  First, they argue that Plaintiff's "inability to allege any specific details about the identity of her trafficker" renders her claims implausible and in violation of Federal Rule of Civil Procedure 8, because they could not have participated in a trafficking venture with

ORDER ON THE G6 DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (DKT. NO. 120) - 4

an "unknown individual." (*Id.* at 6.)  Second, the G6 Defendants argue Plaintiff's complaint does not allege the requisite knowledge that Plaintiff specifically was being sex trafficked, rather than engaging in commercial sex work or rather than sex trafficking occurring at the Motel 6s more generally.  (*Id.* at 7.)

In response, Plaintiff asserts that she is not required to plead the names of her traffickers, because the focus of this lawsuit is the hotel defendants, not the traffickers.  (Dkt. No. 123 at 6.) She further argues that she has plausibly alleged the G6 Defendants' participation in a trafficking venture they knew or should have known was trafficking her specifically.  (*Id.*)  The G6 Defendants replied (Dkt. No. 125) and this matter is now ripe for disposition.

### III    LEGAL STANDARD

"Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6)." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation omitted).  "Judgment on the pleadings is proper when, taking all the [factual] allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Honey v. Distelrath*, 195 F.3d 531, 532 (9th Cir. 1999).  This includes cases where there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  As with Rule 12(b)(6) claims, the Court may not look beyond the pleadings to resolve a Rule 12(c) motion without converting the motion into one for summary judgment. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989).

ORDER ON THE G6 DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (DKT. NO. 120) - 5

## IV    DISCUSSION

### A.  Standards for Liability Under the TVPRA

In 2003, Congress passed the TVPRA and added a civil right of action to the existing criminal statute that allows victims of trafficking to recover against their traffickers.  *See* 18 U.S.C. § 1595(a).  The addition to the statute

> [C]reates civil liability for two categories of defendants: (1) those who have themselves committed a criminal offense under § 1591 of the TVPRA (i.e., perpetrator liability) and (2) those who are not themselves subject to criminal liability but who knowingly benefitted from participation in a venture that they knew or should have known was committing an offense under § 1591 of the TVPRA (i.e., beneficiary liability).

*B.J. v. G6 Hosp., LLC*, Case No. 22-cv-03765-MMC, 2023 WL 6120682, at *3 (N.D. Cal. Sept. 18, 2023) (citations omitted).

### 1.  Beneficiary Liability

As for beneficiary liability, Congress amended the TVPRA once again in 2008, creating a cause of action against those who *facilitate* such trafficking ventures:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator **(or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)** in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a) (emphasis added); *Ditullio v. Boehm*, 662 F.3d 1091, 1094 n.1 (9th Cir. 2011) (Callahan, J., dissenting).  "Section 1595 'opened the door for liability against facilitators who did not directly traffic the victim, but benefitted from what the facilitator should have known was a trafficking venture.'"  *J.C. v. Choice Hotels Int'l, Inc.*, Case No. 20-cv-00155-WHO, 2020 WL 6318707, at *3 (N.D. Cal. Oct. 28, 2020) (quoting *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 181 (E.D. Pa. 2020)).  To prevail on a theory of beneficiary liability under

the TVPRA, a plaintiff must allege that the defendant "(1) knowingly benefitted, (2) from participation in a venture [ ], (3) which they knew or should have known was engaged in conduct that violated the TVPRA." *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1175 (9th Cir. 2022); *B.J.*, 2023 WL 6120682, at *3.

A plaintiff may successfully plead these elements in two distinct ways. *B.J.*, 2023 WL 6120682, at *3. First, the plaintiff may allege that the defendant's *own* acts, omissions, and state of mind establish each element. This is known as direct beneficiary liability. Alternatively, a plaintiff may advance an agency theory that imputes the acts, omissions, and state of mind of an agent to the defendant; this is known as indirect beneficiary liability. *A.B. v. Hilton Worldwide Holdings, Inc.*, 484 F. Supp. 3d 921, 935–936 (D. Or. 2020) (distinguishing direct and indirect beneficiary liability theories under the TVPRA); *B.M. v. Wyndham Hotels & Resorts, Inc.*, Case No. 20-cv-00656-BLF, 2020 WL 4368214, at *4 (N.D. Cal. July 30, 2020) (same); *Doe (K.E.C.) v. G6 Hosp., LLC*, 750 F. Supp. 3d 719, 732 (E.D. Tex. 2024) ("[i]ndirect liability is a separate consideration from beneficiary liability under the TVPRA, which is a form of direct liability"); *H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 704 (E.D. Mich. 2020) (distinguishing direct and indirect beneficiary liability theories under the TVPRA); *A.D. v. Wyndham Hotels & Resorts, Inc.*, No. 4:19CV120, 2020 WL 9550005, at *3 n.1 (E.D. Va. Sept. 21, 2020) ("[B]eneficiary liability is not third-party liability. Rather, it is another form of direct liability. Those who knowingly benefit from participating in a venture that they knew or should have known was sex trafficking are themselves directly liability for the harms caused to the victims.").

Courts agree that it is "generally more difficult" for a plaintiff to bring a direct beneficiary claim against a parent company, corporate affiliate, or franchisor of a hotel—as opposed to the local hotel—because such corporations are typically one or multiple steps

removed from the local hotel and its staff. *Doe (K.E.C.)*, 750 F. Supp. 3d at 734; *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 562 (7th Cir. 2023). Therefore, courts require plaintiffs to "'connect the dots'" between the alleged trafficking and the franchisor or parent company when pursuing a direct beneficiary claim.[1] *Doe (K.E.C.)*, 750 F. Supp. 3d at 734 (citation omitted); *B.M.*, 2020 WL 4368214, at *5.

As for indirect beneficiary or vicarious liability, courts in the Ninth Circuit apply federal common law agency principles under the TVPRA. *J.M. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-00672-KJM-JDP, 2022 WL 10626493, at *5 (E.D. Cal. Oct. 18, 2022). "An actual agency relationship requires (1) a manifestation by the principal that the agent shall act for him; (2) that the agent has accepted the undertaking; and (3) that there is an understanding between the parties that the principal is to be in control of the undertaking." *B.J.*, 2023 WL 6120682, at *9 (citation and quotations omitted). Courts have found allegations in a complaint sufficient to show an agency relationship where the plaintiff "allege[d] defendants exercised control over the day-to-day operations of the hotels by hosting online bookings, setting hotel employee wages, making

---

[1] Courts have concluded that, "[i]n order to sufficiently 'connect the dots,' a plaintiff must allege facts that link the franchisors to the traffickers through the franchisors' oversight of the franchisees and hotel operations." *Doe v. Wyndham Hotels & Resorts, Inc.*, No. 2:24-CV-04895-SVW-MAR, 2025 WL 1119736, at *4 (C.D. Cal. Mar. 5, 2025). Allegations that a franchisor observed signs of trafficking through an inspection are typically insufficient; likewise, courts have dismissed complaints alleging general knowledge of commercial sex activity or complaints that argue a franchisor did not fight hard enough to prevent trafficking. *See, e.g.*, *A.B.*, 484 F. Supp. 3d at 938; *E.S. v. Best W. Int'l, Inc.*, 510 F. Supp. 3d 420, 427 (N.D. Tex. 2021); *A.D. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-648, 2023 WL 3004547, at *4 (M.D. Fla. Apr. 19, 2023); *A.D. v. Wyndham, Hotels & Resorts, Inc.*, No. 4:19-cv-120, 2020 WL 8674205, at *4 (E.D. Va. July 22, 2020). Indeed, the TVPRA does not require franchisors to affirmatively stop or monitor trafficking. *B.M.*, 2020 WL 4368214, at *7. By contrast, factual allegations that show a franchisor or parent company retained day to day control over room rentals, exercised substantial oversight over hotel operations, collected data about all hotel guests, controlled all housekeeping policies, and had policies in place that required staff to report indicia of trafficking have been found sufficient to state a claim for direct beneficiary liability. *See Doe*, 2025 WL 1119736, at *5; *see also Doe (K.E.C.)*, 750 F. Supp. 3d at 734–735; *B.J.*, 2023 WL 6120682, at *8.

ORDER ON THE G6 DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (DKT. NO. 120) - 8

employment decisions for the hotels, providing standardized training methods for hotel employees, and fixing hotel room rent prices." *J.M.,* 2022 WL 10626493, at *5 (citing cases that found the same).

### 2. Perpetrator Liability

Perpetrator liability under § 1595 adopts § 1591's "'elements for criminal liability.'" *B.J.*, 2023 WL 6120682, at *3 (citation omitted). Under that section, "anyone who 'knowingly . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person with knowledge that means of force, threats of force, fraud, coercion . . . or any combination of such means will be used to cause the person to engage in a commercial sex act.'" *Id.* (citing 18 U.S.C. § 1591(a)); *see also A.D.*, 2020 WL 8674205, at *2 n.1 (§ 1591 has an actual knowledge requirement, whereas beneficiary liability under § 1595 requires only constructive knowledge). Thus, to state a claim against a hotel under a perpetrator theory, the plaintiff must plausibly allege the defendant "'knowingly harbored or maintained a person with knowledge that fraud or force would be used to cause her to engage in a commercial sex act.'" *B.J.*, 2023 WL 6120682, at *3 (citation omitted).

### B. Identity of Plaintiff's Trafficker

The Court first addresses the threshold question of whether Plaintiff's failure to provide the name of her trafficker warrants dismissal of her amended complaint on its face. The G6 Defendants argue they cannot possibly know about any alleged TVPRA violation if they do not know the identity of the trafficker (and trafficking venture) with whom they were allegedly involved. (Dkt. No. 120 at 10–13.) According to the G6 Defendants, Plaintiff's failure to identify the "central figure underlying this lawsuit" undercuts the possibility that the G6 Defendants perpetrated, participated, or knowingly benefitted from the trafficking venture. (*Id.*

at 11.)  But as explained in Sections IV(C) *infra*, Plaintiff's perpetrator liability claim fails, and all that is required for a beneficiary liability claim at this stage are facts to show the defendant "rented rooms to people [it] knew or should have known were engaged in sex trafficking[,]" *B.J. v. G6 Hosp., LLC*, Case No. 22-cv-03765-MMC, 2023 WL 3569979, at *5 (N.D. Cal. May 19, 2023), which Plaintiff has done.

Indeed, other courts that have dealt with this very issue have determined a TVPRA complaint to be sufficient at the pleading stage if it "'clearly name[s]' the defendant hotel and make[s] 'allegations specific to their failure to prevent [plaintiff's] sex trafficking.'" *E.B. v. Howard Johnson by Wyndham Newark Airport*, Civil Action No. 21-2901 (JXN) (JRA), 2023 WL 12053001, at *4 (D.N.J. Dec. 29, 2023); *see also J.H. v. Paramount Hospitality LP*, Case No. 2:25-CV-011-Z, 2025 WL 2201051, at *1 (N.D. Tex. Aug. 1, 2025) (In denying in part the defendant's motion to dismiss, "[t]he Court did not require Plaintiff to provide the name or identity of her alleged trafficker.").  In both *E.B.* and *J.H.*, the defendant hotels explicitly challenged the plaintiff's failure to provide the name or identity of her trafficker; in both cases, the courts dispensed of that argument.  *See E.B.*, 2023 WL 12053001, at *3; *J.H.*, 2201051, at *3 ("Plaintiff is correct" that "the identity of [her] traffickers is of no import" in a beneficiary liability case).  The complaint meets the requirements of Rule 8 if it contains "'allegations specific to the [defendant-hotel], including that [defendant-hotel] knew or should have known about sex trafficking generally at its properties and in the area' and that the defendant-hotel failed to take adequate measures to prevent the sex trafficking of the Plaintiff." *E.B.*, 2023 WL 12053001, at *3 (internal citation and quotations omitted).

Plaintiff is correct that this information is the subject of discovery (Dkt. No. 123 at 20–21) and at some point, the lack of information about her trafficker's identity may present a bigger

ORDER ON THE G6 DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (DKT. NO. 120) - 10

hurdle.  At this stage, however, her failure to name her trafficker does not run afoul of Federal Rule of Civil Procedure 8.  *E.B.*, 2023 WL 12053001, at *3 (internal citation and quotations omitted).  The Court therefore proceeds with analyzing the merits of Plaintiff's TVPRA claims.

## C.  Beneficiary Liability Claim

To state a claim under a § 1595(a) beneficiary theory, "[the plaintiff] must allege facts from which it can reasonably [be] inferred that [the defendants] (1) knowingly benefitted financially or by receiving anything of value; (2) from participation in a venture; (3) they knew or should have known has engaged in sex trafficking."  *J.C.,* 2020 WL 6318707, at *4 (internal citations and quotations omitted).

### 1.  Knowingly Benefit

Plaintiff alleges the G6 Defendants "received a financial benefit" from their participation in the trafficking venture by "renting hotel rooms to Plaintiff and Plaintiff's trafficker on numerous occasions."  (Dkt. No. 74 at 22, 23, 42.)  The G6 Defendants do not dedicate much time to refute this claim; they argue only that an "ordinary commercial transaction, like a room rental," is not a "'common undertaking or enterprise involving risk and potential profit.'"  (Dkt. No. 120 at 14) (quoting *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726–727 (11th Cir. 2021)).  But district courts across the country, including this one, have held that the rental of a hotel room (or royalties from that rental) constitutes a financial benefit sufficient to meet the "knowingly benefits financially" element of § 1595.  *A.B.*, 484 F. Supp. 3d at 936 (collecting cases); *see also B.C. v. G6 Hosp. Property LLC*, Case No. 3:25-cv-05057-DGE, 2025 WL 1837620, at *5 (W.D. Wash. July 3, 2025); *B.M.*, 2020 WL 4368214, at *4 (citing *H.H. v. G6 Hosp., LLC*, No. 2:19-CV-755, 2019 WL 6682152, at *2 (S.D. Ohio Dec. 6, 2019)); *Doe (S.A.S.) v. ESA P Portfolio*

*LLC*, No. 3:23-CV-06038-TMC, 2024 WL 3276417, at *9 (W.D. Wash. July 2, 2024).

Plaintiff's allegations are therefore sufficient to establish the first element.

### 2. Participation in a Joint Venture the G6 Defendants Knew or Should Have Known Engaged in Sex Trafficking

"The phrase 'participation in a venture' requires a plaintiff to allege that the defendant took part in a common undertaking or enterprise involving risk and potential profit." *A.B. v. Interstate Mgmt. Co., LLC*, 746 F. Supp. 3d 997, 1006 (D. Or. 2024) (citation omitted and cleaned up). There are two ways a plaintiff can "connect the dots" between their experience as a victim of sex trafficking and the particular defendant in the lawsuit for purposes of the second prong of a TVPRA claim: "'by alleging a direct association between the defendant hotel and the plaintiff's trafficker, or by showing a continuous business relationship between a defendant hotel and a sex trafficker where the defendant rented rooms to people it knew or should have known were engaged in sex trafficking.'" *B.J.,* 2023 WL 6120682, at *4 (citation omitted). An inference of participation can be drawn if the plaintiff establishes that the defendant provided assistance, support, or facilitation to the trafficker through such a continuous business relationship. *A.B.*, 746 F. Supp. 3d at 1006 (citation omitted). In this way, "[t]he third prong of a direct beneficiary liability claim overlaps substantially with the second, in that it requires the plaintiff to assert facts supporting the defendant's knowledge of the venture in which it allegedly participated, i.e., that the defendant 'rented rooms to people [it] knew or should have known were engaged in sex trafficking.'" *B.J.,* 2023 WL 6120682, at *4 (citation omitted).

The Court finds that Plaintiff has alleged sufficient facts to show that the G6 Defendants knew or should have known she was being trafficked at their Seattle-area Motel 6s.

First, Plaintiff alleges she was routinely beaten and physically abused by her traffickers and that her injuries were visible to the G6 Defendants during her frequent stays. (*See* Dkt. No.

ORDER ON THE G6 DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (DKT. NO. 120) - 12

74 at 8) (describing her "busted lip and black eyes"; scars and burns on her skin from cigarettes; and that her teeth were knocked out on multiple occasions).  Plaintiff also alleges she was "visibly scared, would not make eye contact, was withdrawn, and [was] timid" during her interactions with hotel staff when she and her traffickers would check into the hotels.  (*Id.*)  "In cases where courts found a plaintiff to have adequately stated a TVPRA beneficiary claim as against a hotel, the plaintiff typically alleges that they exhibited some external indicator of physical distress that would have been obvious to hotel staff had they not been negligent[.]"  *A.B. v. Extended Stay Am. Inc.*, No. 3:22-CV-05939-DGE, 2023 WL 5951390, at *6 (W.D. Wash. Sept. 13, 2023) (collecting cases).  Plaintiff also lays out other "red flags" she asserts should have put the G6 Defendants on notice she was being trafficked at their hotels, including that her traffickers paid for stays in cash and requested rooms away from other guests or the front desk; the traffickers frequently requested new linens but never let housekeeping staff into the rooms they rented; and there were "men waiting out of the room while other men were inside with Plaintiff for short periods of time."  (Dkt. No. 74 at 36.)  While these allegations alone are not inconsistent with voluntary commercial sex activity, *see A.B.*, 2023 WL 5951390, at *6–7, when taken together with Plaintiff's allegations of her physical injuries and demeanor in front of staff, they plausibly establish that the G6 Defendants knew or should have known Plaintiff was being trafficked.

Citing *B.J.*, 2023 WL 3569979, at *6, the G6 Defendants argue that Plaintiff's physical appearance and injuries could have been consistent with "an accident, drug abuse, domestic violence, or any other number of possible scenarios other than sex trafficking."  (Dkt. No. 120 at 15.)  Therefore, according to the G6 Defendants, Plaintiff does not plausibly allege that they knew or should have known that Plaintiff was engaging in commercial sex by fraud, force, or

coercion. (*Id.*)  But in *B.J.*, the court was faced with allegations that housekeeping staff witnessed the plaintiff's sex buyers "violently attack her," watched buyers "swiftly depart" the plaintiff's room undressed, or entered the plaintiff's room while she was being sold or preparing to be sold for commercial sex.  2023 WL 3569979, at *6 (citations omitted).  That court concluded that the allegations were "equally consistent" with other criminal activity, such as prostitution.  *Id.*  But here, Plaintiff has not only alleged "red flags" consistent with commercial sex work (*see* Dkt. No. 74 at 36), she has alleged that she was frequently injured in front of hotel staff, appeared afraid and withdrawn, and did not speak when she and her traffickers were checking into the hotels.  (*Id.* at 8.)  The combination of these facts, while perhaps not as detailed as some might prefer, "nudg[e]" Plaintiff's allegations "across the line from conceivable to plausible."  *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009) (citation omitted).

The Court notes, however, that many other facts Plaintiff identifies are not sufficient to establish beneficiary liability.  For example, Plaintiff's sweeping allegations that the G6 Defendants knew Plaintiff was being trafficked because sex trafficking was occurring at Motel 6s across the country are unpersuasive.  (*See* Dkt. No. 74 at 28–32.)  The same is true for Plaintiff's list of online reviews for the subject Motel 6s that mention prostitution, drug dealing, and other crimes.  (*Id.* at 33–36.)  Nowhere in these facts are allegations that sufficiently link notice of *Plaintiff's* sex trafficking to any of the G6 Defendants.  *See A.B.*, 484 F. Supp. 3d at 938 (citing *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020) (noting that § 1595 "'speaks in singular terms,'" i.e., "'participation in *a* venture which that person . . . should have known *has* engaged in *an* act in violation'" of the statute)).

Plaintiff also does not explain whether or how the G6 Defendants were (or should have been) aware the maintenance worker was paying Plaintiff's traffickers to have sex with her, nor

ORDER ON THE G6 DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (DKT. NO. 120) - 14

that he was acting within the scope or authority of his employment in doing so. (*See* Dkt. No. 74 at 36.) *Cf. B.J.*, 2023 WL 6120682, at *6–7 (rejecting a hotel defendant's claim that the manager's participation in the trafficking, which included instructing the traffickers on how to be more discrete and assisting in moving the traffickers' rooms away from surveillance cameras, was outside the scope of his employment because the manager's actions were an "outgrowth" of his authority as a hotel manager to rent rooms and operate the hotel) (citations omitted). And Plaintiff's vague and conclusory assertion that a male security guard was "friendly" with the traffickers and would "protect them and the rooms they would rent" is similarly deficient. (Dkt. No. 74 at 36–37.) The Court is not required to accept as true allegations that require "unwarranted deductions of fact[] or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

Though the complaint could be improved upon, Plaintiff has identified sufficient facts that when viewed most favorably to her, "'connect the dots'" between her being trafficked and the G6 Defendants' alleged knowledge of the trafficking to establish a direct beneficiary liability claim. *Doe (K.E.C.)*, 750 F. Supp. 3d at 734 (citation omitted). And whether the claims can proceed after a full factual record is developed is question for another day. For now, the G6 Defendants' motion is DENIED as to Plaintiff's beneficiary liability claim.

**D. Indirect Liability Claim**

To state a claim for vicarious liability under an agency theory, Plaintiff must plausibly allege that "(1) Defendants and their corresponding hotels were in an agency relationship, and (2) the hotels or hotel staff are plausibly liable under § 1595." *A.B.*, 484 F. Supp. 3d at 939.

Plaintiff contends the G6 Defendants (the G6 parent companies and the Motel 6 franchisees) are in an actual agency relationship. (Dkt. No. 74 at 15.) District courts in the Ninth Circuit apply federal common law agency principles under the TVPRA. *J.M.*, 2022 WL 10626493, at *5. "An actual agency relationship requires (1) a manifestation by the principal that the agent shall act for him; (2) that the agent has accepted the undertaking; and (3) that there is an understanding between the parties that the principal is to be in control of the undertaking." *B.J.*, 2023 WL 6120682, at *9 (internal citation and quotations omitted).

Allegations in a complaint are sufficient to show an agency relationship in a TVPRA case where the plaintiff "alleges defendants exercised control over the day-to-day operations of the hotels by hosting online bookings, setting hotel employee wages, making employment decisions for the hotels, providing standardized training methods for hotel employees, and fixing hotel room rent prices." *J.M.,* 2022 WL 10626493, at *5 (citing cases that found the same). The Court finds Plaintiff has met her burden of alleging a plausible claim of an actual agency relationship between the G6 operating companies and the Motel 6 properties because she has alleged facts which, if proven, would support her theory that the parent companies have authority to control day-to-day operations of the subject hotels. (*See* Dkt. No. 74 at 15–19) (describing policies and manuals; hotel management training; hiring; technology agreements; guest services; auditing; and inspections, among other activities). Accordingly, Plaintiff states a claim under a vicarious liability theory because she has established an agency relationship and plausibly alleges the G6 Defendants are liable under § 1595. *See* Section IV(C) *supra*. The G6 Defendants' motion is DENIED as to Plaintiff's indirect liability claim.

**E. Plaintiff's Perpetrator Liability Claim**

To state a claim against a hotel under a perpetrator theory, the plaintiff must plausibly allege the defendant "'knowingly harbored or maintained a person with knowledge that fraud or force would be used to cause her to engage in a commercial sex act.'" *B.J.*, 2023 WL 6120682, at *11 (citation omitted). A "perpetrator" of sex trafficking can either be a direct violator or a participant, but both require actual knowledge of the trafficking under § 1591(e)(4). *Christina T. v. Bellagio LLC*, 806 F. Supp. 3d 1185, 1196 (D. Nev. 2025) (citations omitted).

Plaintiff alleges the G6 Defendants violated § 1591 when they "harbored individuals, including Plaintiff," that they knew would be caused to engage in commercial sex acts through "force, coercion, or fraud" at the G6 Defendants' hotels. (Dkt. No. 74 at 41.) Rather than pointing to facts specifically alleged in the complaint that would shade in her perpetrator liability claim, however, Plaintiff effectively invites the Court to speculate as to what conduct establishes the *actual* knowledge requirement. Such "'naked assertion[s]' devoid of 'further factual enhancement'" do not meet the plausibility standard to state a cognizable claim for relief. *Ashcroft*, 556 U.S. at 678 (citation omitted). The G6 Defendants' motion is therefore GRANTED as to Plaintiff's perpetrator liability claim.

## V    CONCLUSION

For the reasons stated above, the G6 Defendants' motion for judgment on the pleadings (Dkt. No. 120) is DENIED as to the beneficiary liability and indirect liability claims and GRANTED as to the perpetrator liability claim. Plaintiff's perpetrator liability claim is DISMISSED.

Dated this 23rd day of March 2026.

David G. Estudillo
United States District Judge